498 So.2d 863 (1986)
Kenneth WHITEHEAD, Petitioner,
v.
STATE of Florida, Respondent.
No. 67053.
Supreme Court of Florida.
October 30, 1986.
Rehearing Denied January 5, 1987.
*864 Michael E. Allen, Public Defender, Second Judicial Circuit, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for petitioner.
Jim Smith, Atty. Gen. and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
BARKETT, Justice.
We have for review Whitehead v. State, 467 So.2d 779 (Fla. 1st DCA 1985). In that decision, the district court certified the following question as being of great public importance:
When a defendant who committed a crime before 1 October 1983 affirmatively selects sentencing pursuant to the sentencing guidelines, must the record show the defendant knowingly and intelligently waived the right to parole eligibility?
Id. at 780. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
This Court answered the certified question in Cochran v. State, 476 So.2d 207 (Fla. 1985). Thus, we approve the district court's holding that the record does not have to show that a defendant knowingly and intelligently waived the right to parole eligibility if it shows that he affirmatively selected the guidelines. We disapprove, however, the district court's holding that the habitual offender statute (section 775.084, Florida Statutes (1985)) is an adequate reason to depart from the sentencing guidelines (Florida Rule of Criminal Procedure 3.701 promulgated under the authority of section 921.001, Florida Statutes (1985)).
In determining the continued viability of the habitual offender statute in light of the subsequently enacted sentencing guidelines, we recognize that we must attempt to preserve both statutes by reconciling their provisions, if possible. See State v. Digman, 294 So.2d 325 (Fla. 1974). We find that we cannot do so. In order to retain the habitual offender statute, we would have to conclude that either the sentencing guidelines are not applicable to "statutory" habitual offenders (i.e., those defendants whom the state seeks to punish pursuant to the specific provisions of section 775.084, Florida Statutes) or, if applicable, that the habitual offender statute may be used in and of itself as a legitimate reason to depart from the guidelines. We can find no logical support for either proposition.
The habitual offender statute[1] was originally enacted as a scheme to impose an *865 enhanced sanction upon those defendants who had committed other crimes in the past and posed a danger to society in the future thereby evincing an increased need for a lengthier term of incarceration. See Eutsey v. State, 383 So.2d 219, 223 (Fla. 1980) (purpose of habitual offender act is to allow enhanced penalties for those defendants who meet objective guidelines indicating recidivism).
In 1982, a sentencing commission created by the legislature developed a statewide system of sentencing guidelines to be implemented by October 1, 1983. See Ch. 82-145, § 1, Laws of Fla. The guidelines were intended to eliminate "unwarranted variation in the sentencing process by reducing the subjectivity in interpreting specific offense-related and offender-related criteria and in defining their relative importance in the sentencing decision" and to establish the rule that "[t]he severity of the sanction should increase with the length and nature of the offender's criminal history." Fla.R.Crim.P. 3.701(b). Furthermore, the guidelines were to be generally applicable.
Section 921.001(4)(a), Florida Statutes (1985), requires that:
The guidelines shall be applied to all felonies, except capital felonies, committed on or after October 1, 1983, and to all felonies, except capital felonies and life felonies, committed prior to October 1, 1983, for which sentencing occurs after such date when the defendant affirmatively selects to be sentenced pursuant to the provisions of this act.
(Emphasis added.) This language is explicit and unambiguous. The only exceptions to the sentencing guidelines scheme are capital felonies and offenses committed prior to October 1, 1983 in which the defendant does not affirmatively select to be sentenced under the guidelines. The statute does not exempt defendants sentenced under the habitual offender statute.
Although the legislature did not repeal section 775.084 when it adopted the guidelines, we believe the goals of that section are more than adequately met through application of the guidelines. The habitual offender statute provides an enhanced penalty based on consideration of a defendant's prior criminal record and a factual finding that the defendant poses a danger to society. The guidelines take into account both of these considerations.
First, a defendant's prior criminal record is carefully and specifically considered and scored within the guidelines. Sentences automatically escalate in accordance with the number and seriousness of prior convictions. Whereas, under the habitual offender statute the state had to specifically request habitual offender status in a separate proceeding in order to assure an increased sentence for prior offenses, under the guidelines every defendant's prior record is automatically weighed and results in an enhanced sentence.
Second, the factual finding that a defendant poses a danger to society is equally accommodated by the guidelines and is also applied to all defendants. Some indicia of future danger are, of course, weighed and scored within the guidelines. Victim injury, for example, which may under some circumstances indicate dangerousness, is specifically scored and therefore considered in a guidelines sentence. The same is true regarding a defendant's use of a weapon and his legal status when committing a crime. Other evidence, however, which establishes beyond a reasonable doubt that the defendant poses a danger to society in the future can clearly be considered justification for a departure from the recommended sentence.
In short, the objectives and considerations of the habitual offender statute are fully accommodated by the sentencing guidelines. In light of this, and the clear language of section 921.001(4)(a), we must conclude that section 775.084 cannot be considered as providing an exemption for a guidelines sentence.
*866 The next question, then, is whether section 775.084 can be considered an adequate reason for a departure sentence. It is true that the 1985 committee note to Florida Rule of Criminal Procedure 3.701(d)(10) implies that the habitual offender statute may be used as a basis for departing from the guidelines. That note provides in part:
If the offender is sentenced under section 775.084 (habitual offender), the maximum allowable sentence is increased as provided by the operation of that statute.
However, the note then continues:
If the sentence imposed departs from the recommended sentence, the provisions of paragraph (d)(11) shall apply [i.e., the reasons must be clear and convincing and in writing].
To permit departure based on the criteria of the habitual offender statute, however, would conflict with our holding in Hendrix v. State, 475 So.2d 1218 (Fla. 1985). In Hendrix, this Court held that the trial judge erred when he departed from the recommended sentence based upon a factor which had already been weighed in determining the presumptive sentence. Such "double-dipping" was considered contrary to "the spirit and intent of the guidelines." Id. at 1220. Thus, we cannot permit a departure based on the habitual offender statute which is specifically premised on consideration of the prior criminal record of a defendant.
We also note that the habitual offender statute was enacted when parole was available. Under the guidelines, however, prisoners are not eligible for release on parole. See § 921.001(8), Fla. Stat. (1985). If we permitted application of the enhanced penalties available under the habitual offender statute to sentences without parole, "statutory" habitual offenders would receive sentences which are harsher than those the legislature originally envisioned in enacting the habitual offender statute. Moreover, such sentences would be disproportionately harsh when compared to the sentences of other offenders who have committed similar crimes and have similar criminal records but were not subjected to habitual offender proceedings. Such a result would be contrary to the explicit purpose of the sentencing guidelines which is "to eliminate unwarranted variation in the sentencing process." See Fla.R.Crim.P. 3.701(b).
In addition, we find persuasive the view taken by our sister states with experience in the sentencing guidelines field. Minnesota's sentencing guidelines scheme is substantially similar to our own. Minnesota had a habitual offender statute, similar to Florida's section 775.084, which premised enhancement on prior criminal record and dangerousness. See Minn. Stat. §§ 609.155, 609.16 (1976). That statute, however, was repealed in anticipation of Minnesota's adoption of uniform sentencing guidelines. See 1978 Laws of Minn. ch. 723, Art. I, § 19. As explained by that state's highest court, the sentencing guidelines "replaced" the consequently obsolete habitual offender statute. State v. Michaud, 276 N.W.2d 73, 77 (Minn. 1979). Under circumstances similar to those we face today, the Minnesota legislature concluded that their dangerous offender statute was superseded by the adoption of sentencing guidelines.
North Carolina, like Florida, has retained its habitual offender statute[2] despite its adoption of sentencing guidelines.[3] Unlike Florida, however, under that state's sentencing scheme a defendant's prior convictions and dangerousness are not typically considered in determining the presumptive guidelines sentence. See Comment, Criminal Procedure  The North Carolina Fair Sentencing Act, 60 N.C.L.Rev. 631, 638-39 (1982). Rather, they are treated as aggravating factors justifying departure. When, however, either factor is weighed in arriving at the recommended sentence, the factor may not then serve as the basis for departure. See, e.g., State v. Higson, 310 N.C. 418, 424, 312 S.E.2d 437, 441 (1984) (defendant's dangerousness improperly *867 considered in aggravation because already considered in determining the presumptive sentence).
Accordingly, we cannot agree with the district court when it finds that habitual offender status is an adequate reason to depart from the recommended guidelines sentence. To the contrary, we hold that section 775.084 cannot operate as an alternative to guidelines sentencing because of the clear directives of section 921.001(4)(a). Nor can the habitual offender statute remain viable as a reason for departure in light of our decision in Hendrix.
Because the trial court used the habitual offender statute as its reason for departing from the guidelines in sentencing Whitehead, we must remand with directions to the district court to return the matter to the trial court for resentencing in accordance with this opinion.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, EHRLICH and SHAW, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I dissent. The majority's decision violates two principles of statutory construction. First, courts are required to interpret two apparently conflicting statutes in such a way that both remain in force;[1] and, second, courts should repeal a statute by implication only when no other reasonable interpretation of the repealing statute exists.[2] In this case, I find that the habitual offender statute and sentencing guidelines statute may easily be construed to allow both to remain effective. Consequently, the majority need not repeal the habitual offender statute by implication.
I would construe these two statutes in a way that would allow the habitual offender statute to be used as a ground to depart from the sentence guidelines when based on a finding that the sentence departure is necessary for the "protection of the public." See § 775.084(3), Fla. Stat. (1985). The sentencing guidelines do not include a "protection of the public" finding as part of a prior offense computation. In my view, the use of this additional element as a departure ground is a proper workable construction of both statutes.
NOTES
[1] Section 775.084(3), Florida Statutes (1985), provides:

(3) In a separate proceeding, the court shall determine if it is necessary for the protection of the public to sentence the defendant to an extended term as provided in subsection (4) and if the defendant is an habitual felony offender or an habitual misdemeanant. The procedure shall be as follows:
(a) The court shall obtain and consider a presentence investigation prior to the imposition of a sentence as an habitual felony offender or an habitual misdemeanant.
(b) Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant.
(c) Except as provided in paragraph (a), all evidence presented shall be presented in open court with full rights of confrontation, cross-examination, and representation by counsel.
(d) Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
(e) For the purpose of identification of an habitual felony offender or an habitual misdemeanant, the court shall fingerprint the defendant pursuant to s. 921.241.
[2] See N.C. Gen. Stat. § 14-7.1 et seq (1981).
[3] See N.C. Gen. Stat. § 15A-1340.4 et seq (1983).
[1] Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1980); State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975); State v. Digman, 294 So.2d 325 (Fla. 1974); State v. Collier County, 171 So.2d 890 (Fla. 1965).
[2] State v. Dunmann, 427 So.2d 166 (Fla. 1983); Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla. 1977); Digman; Collier County.