528 So.2d 470 (1988)
Antonio LEDESMA, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2305.
District Court of Appeal of Florida, Second District.
July 8, 1988.
*471 James Marion Moorman, Public Defender, and Laura Griffin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Chief Judge.
Antonio Ledesma was convicted of attempted first degree murder and was sentenced to ninety-nine years in prison. He challenges his sentence on appeal contending, among other things, that the court improperly departed from the guidelines without clear and convincing reasons, and that the ninety-nine-year sentence exceeded the statutory maximum. We need reach only Point I.
According to appellant, he and his victim, Enrique Orobio Rio, had argued over a girl in Colombia and Rio had tried to shoot appellant but had missed, hitting appellant's father instead.
Rio testified that in the early morning hours of November 3, 1985, he visited several bars and consumed five or more beers and two or three rums. He was up all night. Appellant and Rio were both at the A-Train in the early morning hours of November 3, 1985. Appellant testified that while he was there, a friend came and told him Rio was looking for him with a pistol in order to kill him. Appellant said that a friend gave him a pistol to defend himself.
Appellant testified that around 7:00 a.m., on November 3, he went to his wife's house and found Rio standing with his father-in-law, El Papa, on the front porch. Rio claimed he did not know this was appellant's wife's house or that El Papa was appellant's father-in-law. Rio said he called appellant over to have a beer with him. Appellant said he asked El Papa why El Papa had a man there who wanted to kill him. Appellant said El Papa then went into the house. Rio testified appellant then asked him what he was doing at appellant's house. Appellant said he told Rio he did not want Rio at his wife's home.
Rio testified that appellant then took out a pistol and fired at him for no reason. Appellant testified Rio was intoxicated and made a gesture as if to take something out of his shirt. Appellant said he thought Rio was taking out a pistol that had become tangled in his shirt and that he took his gun out to defend himself because he thought Rio was going to kill him. Appellant said he shot Rio several times because he saw Rio taking the gun out to shoot at him.
Appellant testified that he saw a gun on Rio, but that by the time the police got to Rio, another Colombian had removed it. Rio testified he did not have a gun on him at the time. Rio claimed he did not know why appellant shot him. Rio said he was just trying to make peace between appellant and another man.
Rio testified that appellant shot him four times. Detective Duran said that when Rio was in the hospital he told him appellant shot him three times. Rio also gave conflicting and confusing testimony about the sequence in which he was shot. He testified he was shot in the intestines, the thigh and the ankle. Rio testified that after he *472 was shot, he ran and collapsed on a neighbor's porch. He attributed his survival to the fact that he had been an athlete.
The jury found appellant guilty of attempted first degree murder with a firearm. A PSI was ordered and the court found appellant to be an habitual offender.
At the sentencing hearing on August 29, 1986, the court exceeded the guidelines recommendation of twelve to seventeen years prison and sentenced appellant to ninety-nine years prison with credit for time served.
The court gave the following reasons for its departure:
(1) serious nature of defendant's criminal act;
(2) excessive use of violence indicates he is a menace to society; total disregard for society and has displayed a pattern of criminal behavior which indicates he is clearly a menace to society;
(3) necessary for the protection of the public;
(4) outrageous, anti-social act committed against a defenseless person;
(5) habitual felony offender;
(6) the court finds that factually, defendant for no apparent reason, and from a premeditated design to kill, did shoot Enrique Rio numerous times attempting to kill him;
(7) the victim's own testimony was to the effect that had he not been an athlete in top physical condition, he would not have survived defendant's attempt to kill him;
(8) the court finds that the shooting was particularly cruel in that the defendant shot the victim so as to cause physical suffering to the victim, by shooting him in the ankle, leg and thigh before finally dealing the victim the possible death shot to the abdominal area.
The first reason is not a valid reason to depart because it reflects the court's disagreement with the guidelines and is factored into the guidelines score. Scurry v. State, 489 So.2d 25, 28-29 (Fla. 1986).
The second reason includes several elements. First, excessive force is not a valid reason to depart because the facts offered in support are inherent components of the offense of attempted first degree murder. The court said that appellant intended to kill Rio and thought he had killed Rio. Because those factors are inherent components of the offense, they are invalid reasons to depart. State v. Mischler, 488 So.2d 523 (Fla. 1986); § 782.04(1)(a), Fla. Stat. (1985). Second, a finding that a defendant is a menace to society is an invalid departure reason unless it is established beyond a reasonable doubt that he poses a danger to society in the future. Montalvo v. State, 520 So.2d 292 (Fla. 2d DCA 1987). The court cites no facts that establish beyond a reasonable doubt that appellant's actions are likely to recur.
The third reason, that the sentence is necessary to protect the public, was held invalid by this court in Price v. State, 519 So.2d 76 (Fla. 2d DCA 1988).
The fourth reason, that appellant committed an outrageous, antisocial act against a defenseless person, is also invalid. Although the court cited Webster v. State, 461 So.2d 965 (Fla. 2d DCA 1984) in support, Webster does not apply. In Webster, as part of a robbery, the defendant tied up his victims and held them prisoner. Since most robbers do not tie up their victims and hold them prisoner, the defendant's actions in Webster were unusual. Appellant's actions towards the victim here were not unusual. Premeditation is an inherent component of the offense. Since the crime was committed in a common manner, departure was not warranted. Holden v. State, 487 So.2d 1199 (Fla. 5th DCA 1986). Although victim vulnerability has been found valid in some cases, this victim does not fall into any of those categories. Berry v. State, 511 So.2d 1075 (Fla. 1st DCA 1987); Hankey v. State, 485 So.2d 827 (Fla. 1986).
The fifth reason for departure, that appellant was a habitual offender, is also invalid. First, appellant was convicted of a life felony and the habitual offender statute does not apply to life felonies. § 775.084(4)(a)1, Fla. Stat. (1985). At any rate, the habitual offender statute is not a *473 valid reason to depart. Whitehead v. State, 498 So.2d 863 (Fla. 1986).
The sixth reason, that appellant had no reason to kill Rio and did so with premeditation, is also invalid. Those factors are inherent components of the offense. Mischler.
The seventh reason, that Rio attributed his survival to his good physical condition, is also an inherent element of the offense of attempted first degree murder. If appellant had succeeded, he would have been charged with murder, not attempted murder.
The eighth reason, that the shooting was particularly cruel, is not supported by the record. The evidence on the sequence of shots is conflicting at best. The victim himself was unsure. It was, therefore, an abuse of discretion to depart on this basis.
Since the court gave no valid reasons for departure, we reverse and remand with instructions to sentence within the guidelines. See State v. Rousseau, 509 So.2d 281 (Fla. 1987). Appellant's second issue is made moot by our disposition of his first issue.
LEHAN and PARKER, JJ., concur.