558 So.2d 4 (1990)
STATE of Florida, Petitioner,
v.
Roosevelt GLENN, Respondent.
No. 73496.
Supreme Court of Florida.
February 15, 1990.
Rehearing Denied April 12, 1990.
*5 Robert A. Butterworth, Atty. Gen., and David R. Gemmer, Asst. Atty. Gen., Tampa, for petitioner.
Michael E. Allen, Public Defender, and Nancy L. Showalter, Asst. Public Defender, Tallahassee, for respondent.
McDONALD, Justice.
We have for review Glenn v. State, 537 So.2d 611 (Fla. 2d DCA 1988), in which the district court certified conflict with Harris v. State, 520 So.2d 639 (Fla. 1st DCA), review denied, 536 So.2d 244 (Fla. 1988). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash Glenn and approve Harris.
A jury convicted Roosevelt Glenn of multiple counts of drug-related offenses arising from a single episode, including separate convictions and sentences for trafficking in, and delivery of, both cocaine and heroin. The district court affirmed the convictions and sentences. Glenn v. State, 512 So.2d 223 (Fla. 2d DCA 1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). In a motion for postconviction relief, Glenn alleged that multiple convictions for a single criminal act violated the prohibitions against double jeopardy contained in the state and federal constitutions,[1] relying on Carawan v. State, 515 So.2d 161 (Fla. 1987). The trial court denied Glenn's motion. The district court reversed and remanded the case to the trial court to vacate the convictions and sentences relating to the delivery charges and certified conflict with Harris.
Harris considered whether a defendant, convicted of both armed robbery and possession of a firearm during the commission of a felony, could properly challenge those convictions in a postconviction motion based upon a change in decisional law, subsequent *6 to his final appeal, declaring multiple convictions for the same act impermissible. The district court affirmed the trial court's denial of the motion.
At the time of Glenn's original conviction, separate convictions for drug trafficking and delivery charges arising from a single criminal act were proper. Rotenberry v. State, 468 So.2d 971 (Fla. 1985). After the affirmance of Glenn's convictions on appeal, this Court receded from its holding in Rotenberry and held that the legislature did not intend such dual punishment for charges arising from a single act. Carawan, 515 So.2d at 170. Glenn now claims that he is entitled to relief under Carawan. The issue thus presented to this Court is whether a defendant, whose convictions and sentences are final and fully adjudicated, may obtain relief in a postconviction claim that he was improperly convicted of multiple crimes arising from a single transaction. We answer in the negative.
Generally, matters which could have or should have been raised on direct appeal may not be considered by a motion for postconviction relief under rule 3.850 of the Florida Rules of Criminal Procedure. Smith v. State, 453 So.2d 388 (Fla. 1984); McCrae v. State, 437 So.2d 1388 (Fla. 1983). Some changes in decisional law rendered subsequent to final appeal, however, may be raised under the rule. As this Court held in McCuiston v. State, 534 So.2d 1144 (Fla. 1988), any determination of whether a change in the law requires retroactive application should be decided upon traditional principles pertaining to changes in decisional law as set forth in Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
In Witt this Court reiterated its adherence to the very limited role for postconviction proceedings even in death cases. We held that only major constitutional changes of law which constitute a development of fundamental significance are cognizable under a motion for postconviction relief. Most such "jurisprudential upheavals" in the law fall within two broad categories, i.e., decisions such as Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (death penalty inappropriate in rape cases), which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties, and decisions such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state must provide adequate counsel for indigent criminal defendants in felony cases), which are of such significant magnitude as to necessitate retroactive application as determined by the three-prong test applied in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).[2]Witt, 387 So.2d at 929.
Every change in decisional law, however, may not require retroactive application. As we stated in Witt:
In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments. To allow them that impact would, we are convinced, destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.
Id. at 929-30 (footnote omitted).
Balancing the importance of decisional finality against ensuring fairness and uniformity in individual cases is even more fundamental to determining whether a change of decisional law requires retroactive application. The credibility of the criminal justice system depends upon both fairness and finality. Johnson v. State, 536 So.2d 1009 (Fla. 1988). Deciding whether a change in decisional law is a major constitutional change or merely an evolutionary *7 refinement is reflective of the balancing process between these two important goals of the criminal justice system.
We begin an analysis of these two competing interests by recognizing that the law's concern for finality of decisions is in no way diminished by the availability and utilization of a collateral remedy such as rule 3.850. Witt, 387 So.2d at 925. Further, as we stated in Witt:
The importance of finality in any justice system, including the criminal justice system, cannot be understated. It has long been recognized that, for several reasons, litigation must, at some point, come to an end. In terms of the availability of judicial resources, cases must eventually become final simply to allow effective appellate review of other cases. There is no evidence that subsequent collateral review is generally better than contemporaneous appellate review for ensuring that a conviction or sentence is just. Moreover, an absence of finality casts a cloud of tentativeness over the criminal justice system, benefiting neither the person convicted nor society as a whole.
Id. (footnote omitted). Therefore, the doctrine of finality should be abridged only when a more compelling objective, such as ensuring fairness and uniformity in individual adjudications, is present. In practice, because of the strong concern for decisional finality, this Court rarely finds a change in decisional law to require retroactive application. See State v. Washington, 453 So.2d 389 (Fla. 1984). Accord McCuiston v. State, 534 So.2d 1144 (Fla. 1988) (declined to retroactively apply Whitehead v. State, 498 So.2d 863 (Fla. 1986), which held that finding a defendant to be an habitual offender is not a legally sufficient reason for departure from sentencing guidelines); Jones v. State, 528 So.2d 1171 (Fla. 1988) (declined to retroactively apply Haliburton v. State, 514 So.2d 1088 (Fla. 1987), which held that police failure to comply with attorney's telephonic request not to question a defendant further until that attorney could arrive was a violation of due process); State v. Safford, 484 So.2d 1244 (Fla. 1986) (declined to retroactively apply State v. Neil, 457 So.2d 481 (Fla. 1984), which changed the long-standing rule in Florida that a party could never be required to explain the reasons for exercising preemptory challenges); State v. Statewright, 300 So.2d 674 (Fla. 1974) (declined to retroactively apply Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which established that police must warn arrested persons of their right to remain silent before questioning those persons).
McCuiston provides an example of both the limited role of rule 3.850 and the proper approach to be utilized in determining whether a change in decisional law should have retroactive application. As we previously noted, McCuiston considered whether Whitehead should be applied retroactively. Whitehead addressed for the first time the interplay between the habitual offender statute and the sentencing guidelines. We held that sentencing as an habitual offender, by itself, was not a legally sufficient reason for departing from a recommended guidelines sentence. Whitehead, 498 So.2d at 864.
In McCuiston, we recognized Witt as the controlling case by which to determine whether a change in decisional law should be applied retroactively.[3] We then applied the principles of Witt and concluded that Whitehead was merely an evolutionary refinement *8 in the law and not one which required retroactive application. 534 So.2d at 1146. In reaching this conclusion, we found support in Winters v. State, 522 So.2d 816 (Fla. 1988), which clarified the effect of Whitehead on the relationship between the habitual offender statute and the sentencing guidelines. We held that the habitual offender statute could still be employed to raise the maximum statutory penalty as long as the sentence imposed did not exceed the recommended guidelines sentence. By examining Whitehead in light of Winters, it became evident that Whitehead was an evolutionary refinement in the law because of the further refinement by Winters. In reaching a conclusion in the instant case, we follow the analysis applied in McCuiston.
Applying the principles of Witt, we conclude that Carawan was an evolutionary refinement of the law which should not have retroactive application. Carawan involved this Court's attempt to clarify its past decisions interpreting the legislature's intent in enacting subsections 775.021(1) and (4), Florida Statutes (1985). We accepted jurisdiction "to elaborate the constitutional and statutory rationale upon which our prior decisions are grounded." 515 So.2d at 163.[4] We stated further that "we believe, that despite some lack of clarity in the past, the position of this Court can be defined and our prior decisions harmonized." Id. at 164. Based on such clear expression of intent, we hold that in Carawan we were not making a major change in the law, but rather attempting to harmonize and refine the law as it is applied in determining the proper method of construing criminal statutes in light of the constitutional prohibitions against double jeopardy.
We must emphasize that the policy interests of decisional finality weigh heavily in our decision. At some point in time cases must come to an end. Granting collateral relief to Glenn and others similarly situated would have a strong impact upon the administration of justice. Courts would be forced to reexamine previously final and fully adjudicated cases. Moreover, courts would be faced in many cases with the problem of making difficult and time-consuming factual determinations based on stale records. We believe that a court's time and energy would be better spent in handling its current caseload than in reviewing cases which were final and proper under the law as it existed at the time of trial and any direct appeal.
Balanced against the goal of insuring fairness and uniformity in individual cases, we must now rule in favor of decisional finality. We do not see how the retroactive application of Carawan would cure any individual injustice or unfairness to Glenn. As we previously indicated, separate convictions were proper at the time of the jury's original verdict and Glenn's subsequent *9 appeal. Furthermore, if Glenn were brought to trial today, separate convictions and sentences for trafficking in, and delivery of, contraband substances would be permissible. See State v. Smith, 547 So.2d 613 (Fla. 1989). We do not see how Glenn would be subjected to any manifest injustice by now refusing to revisit his case.
Our recent decision in State v. Smith lends support to our conclusion that Carawan should not be applied retroactively. In Smith we examined the effect of the legislature's amendment of subsections 775.021(1) and (4) on Carawan. We stated that it was "readily apparent that the legislature does not agree with our interpretation of legislative intent and the rules of construction set forth in Carawan." 547 So.2d at 615. We then held that the legislature's amendment overrode Carawan from the effective date of that amendment. In light of Smith's impact of Carawan, it becomes evident that Carawan should not be applied retroactively. Only major constitutional changes of fundamental significance require retroactive application. In effect, Glenn is now asking this Court to apply retroactively a decision interpreting the legislature's intent in enacting a statute that the legislature, by amending that statute, has now indicated was incorrect. We simply fail to see the logic of such a position.
Therefore, in the interests of decisional finality, and in light of Smith, we find Carawan to be merely an evolutionary refinement of decisional law and, accordingly, refuse to permit its retroactive application through a motion for postconviction relief under rule 3.850. We therefore quash the district court's decision in Glenn and approve Harris.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[1] The Florida Constitution provides in pertinent part that "[n]o person shall ... be twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const. The federal constitution provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V.
[2] The three prongs are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of a retroactive application of the new rule. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).
[3] Before applying Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), to the facts in McCuiston v. State, 534 So.2d 1144 (Fla. 1988), we initially addressed problems arising out of our opinions in Bass v. State, no. 68,230 (Fla. June 12, 1987), withdrawn on reh'g, 530 So.2d 282 (Fla. 1988). In Bass we considered whether Palmer v. State, 438 So.2d 1 (Fla. 1983), which forbade "stacking" of minimum mandatory sentences for crimes arising out of a single criminal episode, should be applicable to cases adjudicated prior to Palmer. In Bass the trial court sentenced Bass to three consecutive three-year minimum mandatory terms for crimes arising out of a single act. Bass later challenged this sentence in a motion for postconviction relief. In our original opinion in Bass, we did not even consider whether Palmer should be applied retroactively, yet applied Palmer in granting relief to Bass. We held that in Palmer we did not change the law, but rather interpreted statutory provisions and corrected errors in the district courts' implementation of that statute. Therefore, we reasoned that the interpretation of the statute in Palmer related back to the enactment of the statute and, thus, was applicable to Bass. Justice Ehrlich in his dissent pointed out the problems in the original opinion. He argued that, because the majority's decision, in effect, held that, until this Court decides any issue there is no extant law, it was totally contrary to a proper understanding of this Court's relationship to the district courts. Justice Ehrlich also pointed out that any determination of whether a decision of this Court is appplicable to cases which were final before its rendition must undergo the retroactive applicability analysis set forth in Witt. Because of the problems inherent in the original Bass opinion, this Court reconsidered the case on rehearing and withdrew the original opinion. In our opinion on rehearing, while maintaining the result of our original opinion, we abandoned the rationale for that decision. In its place, we held that as a matter of policy, Palmer should be applied retroactively because it would be manifestly unfair to hold otherwise. Because our opinion on rehearing did not discuss the principles of Witt in finding Palmer to be retroactively applicable, the decision should be given limited weight in determining the types of cases which require retroactive application. Postconviction relief, in the context of an alleged change of law, must not be used "to correct individual miscarriages of justice or to permit roving judicial error corrections, in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding." Witt, 387 So.2d at 922. The instant case does not meet that admonition.
[4] The district court in Carawan declined to rule on the merits of the case and certified the issue as one of great public importance, finding that the law of double jeopardy in Florida had become "`curiouser and curiouser.'" Carawan v. State, 495 So.2d 239, 240 (Fla. 5th DCA 1986) (quoting from L. Carroll's Alice's Adventures in Wonderland, Vol. II (1865)).