ALTENBERND, Judge.
Albert Callaway appeals the summary denial of his motion seeking postconviction relief. He claims that his consecutive habitual felony offender sentences are impermissible under the rule announced in Hale v. State, 630 So.2d 521 (Fla.1993). We conclude that Hale applies to both habitual violent felony and habitual felony sentences. Even though Mr. Callaway’s sentences became final more than two years ago, he is entitled to challenge his consecutive habitual felony offender sentences during the two-year period following the issuance of Hale. Accordingly, we reverse and remand for further proceedings.
I. THE RULE IN HALE APPLIES TO BOTH TYPES OF HABITUAL FELONY OFFENDER SENTENCES
On January 27, 1994, Mr. Callaway filed a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). In the motion, he explains that he had been sentenced on July 5, 1990, as a habitual offender to two consecutive 10-year sentences for his involvement in one criminal episode. This court affirmed those sentences in June 1991. His motion points out that the supreme court in Hale recently held there is no statutory authority for consecutive habitual offender sentences for offenses committed during a single criminal episode. He maintains that he is entitled to concurrent sentences, as a matter of law, because his sentences arose from a single criminal episode.
The trial court denied relief without attaching any documents to its order. It concluded that Mr. Callaway should have raised this sentencing issue under Florida Rule of Criminal Procedure 3.850 because the matter can be resolved only after a factual, rather than a legal, determination. Accordingly, the trial court treated the motion as if it were filed under rule 3.850, but denied it as successive because an earlier motion under rule 3.850 had been filed in July 1992 and denied. If the trial court is correct, the earlier denial was not appealed to this court, and we have no documentary support for its ruling. Moreover, the earlier motion was denied more than a year before the supreme court’s decision in Hale. This is the first time that ' Mr. Callaway has had an opportunity to raise this issue since Hale was decided.[1]
In addition to denying the motion as successive, the trial court also reasoned that Hale only applies to habitual violent felony offenders and not to all habitual felony offenders. It is true that Hale involved a habitual violent felony sentence. On the other hand, the court’s reasoning appears to apply equally to both habitual and habitual violent felony sentencing:
We find nothing in the language of the habitual offender statute which suggests that the legislature also intended that, once the sentences from multiple crimes committed during a single criminal episode have been enhanced through the habitual offender statutes, the total penalty should then be further increased by ordering that the sentences run consecutively.
630 So.2d at 524. There is nothing in the statute that expressly permits either variety of habitual offender sentence to be imposed consecutively. While not fully explained in *639 the opinion, this court has recently applied Hale in a direct appeal involving a habitual offender sentence, as compared to a habitual violent offender sentence. See Dietrich v. State, 635 So.2d 148 (Fla. 2d DCA 1994). Two other districts appear to have applied Hale to sentences that were not habitual violent offender sentences. See Goshay v. State, 19 Fla.L.Weekly D1715, 1994 WL 419574 (Fla. 1st DCA Aug. 12, 1994); Sirmans v. State, 638 So.2d 576 (Fla. 1st DCA 1994); Anderson v. State, 637 So.2d 971 (Fla. 5th DCA 1994). In accordance with the above reasoning and authorities, we hold the trial court erred in failing to apply Hale to a habitual felony offender sentence.
II. THE NEW RULE IN HALE APPLIES RETROACTIVELY UNDER WITT
Because the trial courts in this district will undoubtedly receive many postcon-viction motions based on Hale, we discuss whether such motions may be filed unsworn under rule 3.800(a) or whether they must be filed pursuant to rule 3.850. There is analogous precedent that would support or counter almost any resolution of this issue. For the reasons stated below, we conclude that rule 3.850 applies to any conviction preceding Hale and that a two-year window exists after Hale in which to address this issue. See Adams v. State, 543 So.2d 1244 (Fla.1989); Rodriguez v. State, 637 So.2d 934 (Fla. 2d DCA 1994).
Rule 3.800(a) allows an unlimited period in which to address “illegal” sentences. Thus, it is generally reserved for issues that can be resolved as a matter of law and without an evidentiary determination.[2] Judge v. State, 596 So.2d 73 (Fla. 2d DCA 1991), review denied, 613 So.2d 5 (Fla.1992). Nevertheless, this district has, in analogous cases, permitted prisoners to present factual challenges to consecutive minimum mandatory sentences under rule 3.800(a) at any time. See Young v. State, 638 So.2d 532 (Fla. 2d DCA 1994); Brown v. State, 633 So.2d 112 (Fla. 2d DCA 1994); Poiteer v. State, 627 So.2d 526 (Fla. 2d DCA 1993). Other districts have taken different approaches. See Young v. State, 616 So.2d 1133 (Fla. 3d DCA 1993); Nowlin v. State, 639 So.2d 1050 (Fla. 1st DCA 1994).
As a general rule, a postconvietion issue that requires an evidentiary hearing must be resolved under rule 3.850. See Judge, 596 So.2d 73. Whether a prisoner’s consecutive sentences arise from a single criminal episode is not a pure question of law. Resolution of this issue depends upon factual evidence involving the times, places, and circumstances of the offenses. See, e.g., Blount v. State, 641 So.2d 447 (Fla. 2d DCA 1994) (theft and battery on law enforcement officer are one episode); Willis v. State, 640 So.2d 220 (Fla. 2d DCA 1994) (drug paraphernalia discovered during arrest for robbery is separate from robbery episode); Hoise v. State, 638 So.2d 622 (Fla. 1st DCA 1994) (possession of firearm and assault with that firearm are part of single episode); Parker v. State, 633 So.2d 72 (Fla. 1st DCA 1994) (crimes inside and outside a house are two episodes); Scott v. State, 627 So.2d 72 (Fla. 5th DCA 1993) (offenses arising from attempted prison escape deemed one episode).
■ If a prisoner seeking postconviction relief pleaded to the charges, the recorded plea colloquy may not address whether the offenses occurred in one or more episodes. Additionally, those circumstances may not be apparent on the face of the information. It is also unlikely that the documents in the remainder of the prisoner’s court file will, as a matter of law, determine whether the offenses arose from a single episode. Cf. Parker, 633 So.2d 72 (relying on arrest report in record on appeal to determine these issues without evidentiary hearing).
If a prisoner seeking postconviction relief from consecutive sentences was convicted by a jury and has already lost his appeal, the court files available after conviction may contain a transcript of the trial, but even that *640 evidence may not resolve whether all of the offenses were committed in a single episode. Before the decision in Hale, this was not a factual issue that a prosecutor would have emphasized.
Although the issue may not always involve a complex factual question, the post-conviction determination of the number of criminal episodes considered at any prior sentencing hearing will usually, if not always, require an evidentiary determination. Thus, a sworn motion filed pursuant to rule 3.850 is the appropriate method for resolution of this issue.'
For many prisoners, including Mr. Calla-way, the problem with seeking such postcon-viction relief under rule 3.850 is that the normal two-year limitation, if applicable, would bar the motions. Nevertheless, a two-year window following Hale is available if this new rule is retroactive under Witt v. State, 387 So.2d 922 (Fla.1980).
In Witt, the court held that a change of law would not be considered under rule 3.850 unless: (1) it emanated from the United States Supreme Court or the Florida Supreme Court; (2) it was constitutional in nature; and (3) it constituted a development of fundamental significance. Our supreme court’s decision in Hale clearly passes the first prong of this three-prong test.
The second prong requires that the new rule be constitutional in nature. This requirement seems to overlap with the third requirement that the new rule be a development of fundamental significance. We rely to some extent upon the reasoning for the third prong in deciding that the new rule in Hale is constitutional in nature. Although the supreme court did not declare any law unconstitutional in Hale, it invalidated consecutive habitual offender sentences arising from the same criminal episode because no statute expressly authorized such punishment. The punishment clearly could not withstand due process analysis in the absence of an empowering statute. Thus, while the decision is not directly a new rule of constitutional law, it is based primarily upon constitutional analysis, as compared to common law analysis or statutory interpretation. It is “constitutional in nature.”
Turning to the third prong, a change in the law is of “fundamental significance” if it fits within one of two “broad categories.” 387 So.2d at 929. The rule in Hale must be either (1) a change that places the power to impose a certain penalty beyond the authority of the state, or (2) it must pass another three-prong test described in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). This third prong of the Witt test clearly restricts the retroactive application of new rules to changes that are significant “jurisprudential upheavals,” as compared to “evolutionary refinements.”
We are uncertain that Hale fits within the first broad category of changes of fundamental significance. Although the Hale rule limits the state’s power to impose a certain penalty, it does so because the relevant statute fails to expressly authorize such a penalty, not because the constitution bars such a statutory penalty. Cf. Meek v. State, 605 So.2d 1301 (Fla. 4th DCA 1992) (new rule concerning immunity statute fits within this category).
The three-prong test in Stovall and Linkletter requires an examination of: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect on the administration of justice of a retroactive application of the new rule. Witt, 387 So.2d at 926. We conclude that the rule in Hale passes this test.
First, the purpose of the new rule is to impose only those statutory penalties of which citizens have legal notice at the time of the commission of the offense. This purpose has strong due process and equal protection implications.
Second, the old rule was relied upon by many, if not most, circuit judges, but only for a few years. We believe that most of the cases affected by Hale will involve sentences imposed after the 1988 amendment to section *641 775.084. See Ch. 88-131, Laws of Fla.[3] Thus, the old rule was not entrenched in our judicial process. The finality of judgments will not be weakened if we correct the sentencing errors that occurred primarily in this limited period.
Third, the retroactive application of Hale will have no serious effect upon the administration of justice. Admittedly, it will take some time to handle these postconviction motions, but not an unreasonable amount of time. This new rule does not reverse convictions or require extensive testimony. Cf. State v. Austin, 532 So.2d 19 (Fla. 5th DCA) (change in drug trafficking jury instruction not retroactive), review denied, 537 So.2d 568 (Fla.1988). In many cases, the number of criminal episodes may be subject to stipulation. The administration of justice might be more adversely affected by permitting some prisoners to serve 10-year terms at the same time other similar prisoners serve 20-year terms because of an issue that prisoners will perceive to be a legal technicality.
We conclude that this sentencing issue may be raised under oath pursuant to rule 3.850 during the two-year period following Hale. Consequently, in this case, we do not need to determine whether it could also be raised under rule 3.800(a) after the expiration of the two-year window.[4]
Although we decide that the new rule in Hale passes the Witt test for retroactive application under rule 3.850, we must confess that our review of prior precedent applying Witt is not entirely reassuring. Our analysis in this ease appears to be consistent with the First District’s decision to retroactively re-sentence prisoners whose guideline sentences were affected by Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). See Brown v. State, 535 So.2d 332 (Fla. 1st DCA 1988). See also Nilio v. State, 601 So.2d 646 (Fla. 4th DCA 1992) (retroactive application of rule preventing departure from guidelines for violation of probation); Tafero v. State, 459 So.2d 1034 (Fla.1984) (elimination of death penalty for felony murder is retroactive). On the other hand, our analysis seems facially at odds with the supreme court’s decision in McCuiston v. State, 534 So.2d 1144 (Fla.1988). McCuiston held that the rule announced in Whitehead v. State, 498 So.2d 863 (Fla.1986), should not apply retroactively. Whitehead prohibited the use of the habitual offender statute as a reason for departing from the sentencing guidelines. To the extent that Whitehead involved a lengthened sentence under the habitual offender statute, it is similar to this ease. As explained in McCuiston, however, that change had more limited significance. If Hale is not given retroactive application, some prisoners will have sentences twice as long as the maximum sentence that could be lawfully imposed for the same offenses on other prisoners with comparable criminal histories.
Our analysis is completely compatible with this court’s decision to apply retroactively the rule in Palmer v. State, 438 So.2d 1 (Fla. 1983), prohibiting consecutive minimum mandatory sentences arising from one criminal episode. See Cisnero v. State, 458 So.2d 377 (Fla. 2d DCA 1984). However, the supreme court engaged in a different analysis of the same subject in Bass v. State, 530 So.2d 282 (Fla.1988), leaving in doubt the correctness of the reasoning in Cisnero.
In Bass, the supreme court issued an initial decision expressly holding that the new rule in Palmer did not pass the Witt test. See Bass v. State, 12 Fla.L.Weekly 289 (Fla. 1987) (withdrawn on rehearing). The initial decision declared that such “illegal” sen *642 tences should be corrected, even though they did not pass the Witt analysis, because they were “inherently unjust.” Justice Ehrlich dissented, arguing that the majority erred in ruling that pre-Palmer consecutive sentences were illegal and in using “inherently unjust” as an escape valve from the rigid requirements protecting finality in Witt. Bass, 12 Fla.L.Weekly at 289.
On rehearing in Bass, the court issued a shorter final opinion, allowing review of a prisoner’s consecutive minimum mandatory sentences by a motion that was filed under rule 3.850 after the expiration of the usual two-year period. The revised opinion gives this relief because it would be “manifestly unfair” to do otherwise. 530 So.2d at 283. While this reason may seem sufficient to any fair-minded person, it is not an analysis recognized by Witt.
When the supreme court issued this revised opinion, it omitted the discussion of Witt. It did not explain (1) whether the new phrase, “manifest unfairness,” was intended as an abbreviated explanation that the Palmer rule passed the Witt test, or (2) whether it intended to hold that a sentence now could be determined “illegal” through a postconviction factual examination of circumstances creating “manifest unfairness.”[5] Some of the explanation of Bass in McCuiston suggests that the court intended the opinion on rehearing in Bass to be an application of Witt, but many subsequent cases have interpreted Bass as a determination that such manifestly unfair sentences are, under a factual analysis, illegal. With all due respect to the supreme court and with full recognition that these issues involve a difficult balance of finality and due process, the reliance on “manifest unfairness” in Bass has caused repetitive difficulties for the trial and appellate courts as they confront postconviction motions seeking correction of sentences for reasons that require new evidentiary hearings to determine old factual questions.
With these reservations, we reverse the trial court’s order. On remand, if the court again denies relief, it must attach portions of its records that refute Mr. Callaway’s allegations. Anyone aggrieved by subsequent action of the trial court must file a timely notice of appeal to obtain further appellate review.
Because trial courts in Florida need a uniform statewide rule concerning the proper roles of rules 3.800 and 3.850 when faced with this issue, we certify the following questions of great public importance:
1. WHETHER A SENTENCE THAT ALLEGEDLY VIOLATES THE RULE ANNOUNCED IN HALE MAY BE CORRECTED UNDER RULE 3.850 WHEN THE SENTENCE HAS BEEN FINAL FOR MORE THAN TWO YEARS.
2. IF NOT, WHETHER AN UN-SWORN MOTION UNDER RULE 3.800 THAT ALLEGES A HALE SENTENCING ERROR AND REQUESTS A FACTUAL DETERMINATION OF THE NUMBER OF CRIMINAL EPISODES ALLEGES AN “ILLEGAL” SENTENCE THAT MAY BE RESOLVED AT ANY TIME.
Reversed and remanded.
PARKER, A.C.J., and LAZZARA, J., concur.

. This court's records include Mr. Callaway’s direct appeal from these convictions and sentences and a 1991 appeal from the summary denial of a rule 3.800 motion. These records indicate that Mr. Callaway was convicted of burglary and grand theft, both third-degree felonies, , and that he received consecutive habitual felony offender sentences in this case. Our records suggest that the two convictions may have arisen out of a single criminal episode at Creasy's Lawn and Tractor Equipment on January 10, 1990, but we have no ability or authority to make a factual determination on this issue.

. Former Federal Rule of Criminal Procedure 35 provided relief for illegal sentences similar to our rule 3.800(a). Generally, the federal rule was limited to sentencing errors apparent from the face of the record. See Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Petro v. United States, 368 F.2d 807 (6th Cir.1966).

. Prior to 1988, habitual offender sentencing was intermingled in guidelines sentencing and was affected by Whitehead v. State, 498 So.2d 863 (Fla.1986).

. Recently, the First District allowed the Hale issue to be raised in a postconviction proceeding more than two years after sentencing. Booker v. State, 641 So.2d 903 (Fla. 1st DCA 1994). The opinion describes the prisoner’s motion as a rule 3.800(a) motion, but arguably permits such review under the exception to the two-year limitation contained in Witt. Because an illegal sentence can be challenged under rule 3.800 at any time, we doubt the need to apply a Witt analysis to review a sentence that was truly "illegal” from its inception. If there has never been statutory authority for consecutive habitual offender sentencing as Hale decided, then no such consecutive sentence would have been authorized when imposed.

. The supreme court explains some of the basis for its rehearing of Bass in State v. Glenn, 558 So.2d 4 (Fla. 1990). The explanation, however, does not resolve our concerns in this case. Neither does the additional discussion of Bass in Smith v. State, 598 So.2d 1063 (Fla.1992).