ALTENBERND, Judge.
Scottie Smart, Jr., appeals the postcon-viction court’s order denying his motion to correct an illegal sentence. We affirm.
Mr. Smart was born on April 17, 1967. In January 1984, when he was sixteen, he *348 received youthful offender sentences for grand theft, battery on a law enforcement officer, and escape. On June 18,1985, less than ten days after his release from prison on these offenses and two months after his eighteenth birthday, Mr. Smart committed a robbery with a weapon and aggravated battery.
Mr. Smart was convicted of these offenses by a jury and sentenced on November 21,1985. For the robbery, he received a sentence of natural life. As part of the sentencing process, the trial court entered an order classifying Mr. Smart as a habitual offender under section 775.084, Florida Statutes (1983). Because he was classified as a habitual offender and the robbery was a first-degree felony,[1] he was eligible to receive a life sentence. See §§ 775.084(4)(a)(l), 812.13(2)(b), Fla. Stat. (1983); State v. Brown, 530 So.2d 51 (Fla. 1988) (holding that the life sentence authorized by section 775.084(4)(a)(l) is not mandatory but may be imposed if a valid ground for upward departure is provided). The court also prepared a guidelines score-sheet under the 1984 guidelines on a category three scoresheet. The points on that scoresheet totaled 266, which resulted in a guidelines sentence of twelve to seventeen years.
The court decided to depart from the guidelines and prepared eight enumerated written reasons for departure. The first reason was that Mr. Smart had been classified as a habitual offender. The other reasons included the defendant’s use ■ of excessive force, his failure to respond to rehabilitation, his escalating pattern of violent criminal conduct, and the fact that he committed the crime within days of his release from prison. Mr. Smart appealed his judgments and sentences to this court. The record and brief from that case no longer exist, but this court affirmed the judgments and sentences without a written opinion in July 1987. Smart v. State, 509 So.2d 935 (Fla. 2d DCA 1987).
Mr. Smart’s case occurred at a time when sentencing law was in a state of transition. The statutes establishing the sentencing guidelines as substantive law became effective for offenses committed on or after July 1, 1984. See ch. 84-328, § 3, at 1773, Laws of Fla.; Smith v. State, 537 So.2d 982, 986 (Fla.1989) (“[Sentencing guidelines, insofar as they limit the length of sentences to be imposed, are substantive in nature.”). Thus, the guidelines applied to Mr. Smart’s June 1985 offenses. The law governing both the grounds for imposing upward departure sentences and the process by which to impose such a sentence was in its infancy. The habitual offender statute that applied at the time had been enacted prior to the guidelines and had not yet been modified to account for the guidelines. See ch. 84-328, § 3. Compare § 775.084, Fla. Stat. (1983), with § 775.084, Fla. Stat. (Supp.1988).
While Mr. Smart’s appeal was pending, the supreme court decided Whitehead v. State, 498 So.2d 863 (Fla.1986). In Whitehead, the court discussed the conflict between the older habitual offender statute and the newer guidelines statute. Id. at 864. It concluded that it could not reconcile the habitual offender statute with the guidelines statute. Id. Because the guidelines provided that they “shall” be applied to “all” felonies, see § 921.001(4)(a), Fla. Stat. (1985), the court essentially held that the guidelines had supplanted habitual offender sentencing and that this older system could not be used for an offense governed by the guidelines. Whitehead, 498 So.2d at 865. It further concluded that the guidelines addressed most of the same *349 considerations addressed by the habitual offender statute and that it would be “double-dipping” to permit an upward departure based on the defendant’s status as a habitual offender. Id. at 866 (citing Hendrix v. State, 475 So.2d 1218, 1220 (Fla.1985)).
After the decision in Whitehead, it was very clear that the first reason announced by the trial judge to impose an upward departure sentence in Mr. Smart’s case was invalid. On the other hand, several of the other reasons were generally regarded at the time as valid reasons. Those reasons eventually were expressly approved by the case law. See Williams v. State, 504 So.2d 392, 393-94 (Fla.1987) (finding the frequency of the defendant’s conduct in view of the short duration from his previous release from incarceration a valid reason for departure); Keys v. State, 500 So.2d 134, 135-36 (Fla.1986) (finding escalation of violent behavior a valid reason for departure); Booker v. State, 482 So.2d 414, 419 (Fla. 2d DCA 1985) (finding the defendant’s failure to respond to rehabilitative efforts a justification for departure); Smith v. State, 454 So.2d 90, 91-92 (Fla. 2d DCA 1984) (affirming as a valid reason for departure the trial court’s finding of the use of excessive force).
Even before Whitehead was decided, the supreme court had resolved the question of how an appellate court should address a case in which one ground for departure was invalid and other grounds were valid. In Albritton v. State, 476 So.2d 158, 160 (Fla.1985), the court held that when faced with one or more invalid grounds, the appellate court should reverse the sentence and remand for resentencing unless the State was able to convince the appellate court beyond a reasonable doubt that the trial court would have imposed the same upward departure sentence in the absence of the invalid reason. See also State v. Young, 476 So.2d 161 (Fla.1985).
As we review Mr. Smart’s case today, the truth is that we do not know whether his attorney brought Whitehead to this court’s attention in 1987. We can neither prove nor disprove whether the court conducted an Albritton analysis before it affirmed Mr. Smart’s sentences. We do know that Mr. Smart never claimed that his appellate attorney was ineffective in this regard.
But the order that we review denies a motion, filed in 2012, seeking re-sentencing on the ground that the life sentence is illegal. It is well established that the validity of reasons provided to support an upward departure sentence cannot be challenged by a motion pursuant to Florida Rule of Criminal Procedure 3.800(a). See Wright v. State, 911 So.2d 81 (Fla.2005). Mr. Smart argues that his situation is different from the usual case in which a defendant challenges the reason for an upward departure sentence. Even if that is true, it is the burden of the defendant, under rule 3.800(a), to demonstrate as a matter of law that the sentence actually imposed could not have been lawfully imposed under any set of circumstances consistent with the applicable law and the existing court records in his case. See Carter v. State, 786 So.2d 1173, 1181 (Fla.2001).
In this case, it is possible and indeed highly probable that this court was aware of Whitehead and performed the analysis required by Albritton, concluding beyond a reasonable doubt that the one invalid reason for departure did not invalidate the trial court’s sentence in light of the other valid reasons. There simply is no reason to conclude today, after a review of his existing court records, that Mr. Smart’s admittedly harsh sentence could not have been imposed under the applicable law.
Mr. Smart argues that he is entitled to relief under the holdings in Johnson v. *350 State, 902 So.2d 276 (Fla. 1st DCA 2005), and Shelton v. State, 739 So.2d 1235 (Fla. 4th DCA 1999). Johnson involved a similar postconviction motion, but the record established that the one and only reason for his upward departure sentence had been the defendant’s status as a habitual offender. 902 So.2d at 278. In Shelton, the upward departure sentence for a 1987 offense was based only on the defendant’s status as a habitual offender. 739 So.2d at 1236. And the defendant’s sentence as a habitual offender for a 1988 offense exceeded the statutory maximum for that offense. Id. at 1237. As explained earlier, Mr. Smart’s armed robbery was a first-degree felony punishable by life imprisonment once he was classified as a habitual offender. Thus, his upward departure sentence does not exceed the statutory maximum for that offense.
Affirmed.
DAVIS, C.J., and CRENSHAW, J., Concur.

. The judgment describes this conviction as a first-degree life felony. This designation was not based on section 775.082(3)(b), Florida Statutes (1983), but rather on section 775.084(4)(a)(l).