691 So.2d 622 (1997)
Solomon STEVENS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2492.
District Court of Appeal of Florida, Fifth District.
April 18, 1997.
*623 Solomon Stevens, Bushnell, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
ANTOON, Judge.
Following his conviction for, among other things, attempted second-degree murder of a law enforcement officer, Solomon Stevens (defendant) was sentenced to life in prison with a mandatory minimum term of twenty-five years. He has appealed the denial of his motion for post-conviction relief filed under Florida Rule of Criminal Procedure 3.850. We reverse because the defendant's sentence is illegal under State v. Iacovone, 660 So.2d 1371 (Fla.1995).[1]
In 1988, the legislature enacted section 784.07(3), Florida Statutes (Supp.1988), which provided that any person convicted of attempting to murder a law enforcement officer would be guilty of a life felony, punishable as provided in section 775.0825, Florida Statutes (Supp.1988). This latter section in turn provided that a person convicted of attempted murder of a law enforcement officer would be required to serve "no less than 25 years before becoming eligible for parole." These statutes made no distinction with regard to the degrees of the murder attempted. In other words, it appeared from the plain reading of the statute that the punishment would be the same regardless of whether the attempt was to commit first-, second-, or third-degree murder.
However, in Iacovone, our supreme court construed sections 784.07(3) and 775.0825 to apply only to the crime of attempted first-degree murder. In so ruling, the court pointed out that, if the statutes were interpreted otherwise, the crimes of attempted second- and third-degree murder would be punished more severely than the completed crime of second- or third-degree murder. For example, a defendant convicted of attempted second-degree murder of a law enforcement officer would receive a sentence of life or forty years with a twenty-five-year mandatory minimum, while a defendant who actually committed second-degree murder would receive no more than thirty years with a twenty-five-year mandatory minimum. Similarly, a defendant convicted of attempted third-degree murder of a law enforcement officer would receive a sentence of life or forty years with a twenty-five-year mandatory minimum, while one who actually committed third-degree murder would receive a term of imprisonment not exceeding fifteen years with a fifteen-year mandatory minimum. 660 So.2d at 1373.
The state acknowledges the holding in Iacovone but argues that the decision cannot be applied retroactively to the defendant's 1990 conviction. We disagree. Pursuant to the test for retroactivity set forth in Witt v. State, 387 So.2d 922 (Fla.1980), Iacovone must be applied retroactively to this case.
In Witt, our supreme court held that a "change in decisional law" will not be considered in a motion for post-conviction relief unless the change: (a) originates in either the United States Supreme Court or the Florida Supreme Court; (b) is constitutional *624 in nature; and (c) has fundamental significance. Witt v. State, 387 So.2d at 931. In reaching this conclusion, the court weighed two conflicting "goals of the criminal justice systemensuring finality of decision on the one hand, and ensuring fairness and uniformity in individual cases on the other...." Id. at 925. This three-part test was recently affirmed in State v. Callaway, 658 So.2d 983, 986 (Fla.1995).
The Iacovone decision clearly satisfies the first prong of the Witt analysis. The second prong is not as easily resolved because the Iacovone decision rests upon the application of standard rules of statutory construction. However, in a footnote, the court referred to the constitutional implications of the issue, writing:
"Were we to address the constitutional issue, the penalty scheme proposed by the State [applying the statutes to all degrees] would face formidable due process hurdles." See, e.g., State v. Saiez, 489 So.2d 1125, 1128 (Fla.1986) ([T]he guarantee of due process requires that the means selected shall have a reasonable and substantial relation to the object sought to be obtained....).
State v. Iacovone, 660 So.2d at 1373, n. 1. This language supports the conclusion that the Iacovone decision is constitutional in nature.
The second district court's opinion in Iacovone v. State, 639 So.2d 1108 (Fla. 2d DCA 1994), evinces concern over the due process implications of sections 784.07(3) and 775.0825. While the second district's opinion focuses on equal protection, the court refers to Judge Zehmer's concurring opinion in Carpentier v. State, 587 So.2d 1355, 1359 (Fla. 1st DCA 1991), review denied, 599 So.2d 654 (Fla.1992), wherein he wrote that:
[A statutory scheme that provides] for a single level of punishment for an "attempted murder" of a law enforcement officer while preserving different levels of punishment for the actual murder of such officers... and ... purports to impose a greater penalty for an "attempted murder in the third degree" than for a consummated killing constituting "murder in the third degree," smacks heavily of arbitrary and capricious legislation so vague and uncertain in meaning that it fails to meet constitutional requirements of due process.
Iacovone v. State, 639 So.2d at 1109-1110, n. 3.
The constitutional nature of the supreme court's opinion is further demonstrated by the court's discussion of the legislative goal of providing maximum protection for law enforcement officers, and the suggestion that this goal would not be served by punishing an attempt more severely than the completed act. This discussion reveals the statute's vulnerability to equal protection arguments, thereby further suggesting that the Iacovone decision is constitutional in nature.
The third and final consideration under the Witt analysis is whether the change in the law has fundamental significance. Changes in the law which have "fundamental significance" fall into two categories: (a) changes in the law which remove authority from the state to regulate certain conduct or to impose certain penalties, and (b) changes in the law which are of such sufficient magnitude to necessitate retroactive application. Witt v. State, 387 So.2d at 929. The change in the law effectuated by the ruling in Iacovone satisfies the first category since the decision has removed from the state the legislative authority to impose certain penalties for the crimes of attempted second- and third-degree murder of law enforcement officers. In other words, the state may no longer punish the attempt to commit a murder more severely than the completed act of murder.[2]
In summary, we hold that the decision in Iacovone applies retroactively, and therefore, the defendant's sentence of life imprisonment with a twenty-five-year minimum mandatory term must be reversed. On remand, the trial court must resentence the defendant and treat the crime of attempted second-degree murder of a law enforcement officer as a second-degree felony. Notably, the trial court previously determined that the defendant was a habitual violent felony offender. *625 While habitual offender sanctions can not be imposed for life felonies, see e.g. Wiley v. State, 636 So.2d 547 (Fla. 1st DCA 1994), the instant offense is no longer a life felony and, as a result, on remand the trial court may impose enhanced sanctions.
We certify the following question as one of great public importance:
WHETHER STATE V. IACOVONE, 660 So.2d 1371 (Fla.1995), MUST BE APPLIED RETROACTIVELY.
REVERSED and REMANDED.
PETERSON, C.J., concurs.
GRIFFIN, J., dissents with opinion.
GRIFFIN, Judge, dissenting.
I respectfully dissent. The point at which I part company with the majority is its conclusion that the Iacovone decision is "constitutional in nature." This is based on dictum in footnote one of the Iacovone decision where the court referenced the due process requirement that the means selected have a reasonable and substantial relation to the object sought to be obtained. 660 So.2d at 1373, n. 1. The holding of Iacovone, however, was that section 784.07(3) and section 775.0825, Florida Statutes, in referring to "attempted murder of a law enforcement officer" meant attempted first-degree murder, not second or third-degree murder. The fact that the court observed in dictum that if the statute meant what they had just finished saying it did not mean, then (maybe) there might be a constitutional problem does not make a decision "constitutional in nature." Without engaging in a debate over whether it would be unconstitutional for a legislature to establish a criminal penalty for a completed crime, including murder, that is less severe than the attempt to commit the crime, it appears clear from the face of the Iacovone opinion that the case was decided on the basis of garden variety statutory construction. According to my understanding of most classical analyses of retroactive application of a high court decision in the area of criminal law, this one would not qualify. I do acknowledge, however, that the high court's treatment in State v. Callaway, 658 So.2d 983 (Fla.1995), of the retroactivity of its decision in Hale makes the application of the seemingly clear-cut three-prong test of Witt more difficult. The supreme court described its decision concerning the second prong of Witt as follows:
"Hale also satisfies the requirement that it be constitutional in nature. As the district court in the instant case recognized, in the absence of an empowering statute, the imposition of consecutive habitual felony offender sentences for offenses arising out of a single criminal episode could not withstand a due process analysis. Furthermore, the decision in Hale significantly impacts a defendant's constitutional liberty interest."
Callaway, 658 So.2d at 986 (citation omitted). On the face of it, that description of the second prong of the Witt test would make retroactive virtually any high court decision concerning the interpretation of a criminal law or procedure that was favorable to the defendant. It appears more likely, however, that this description is simply a shorthand reference to the Second District Court of Appeal's discussion of this issue. Callaway v. State, 642 So.2d 636 (Fla. 2d DCA 1994). There, Judge Altenbernd explained that Hale involved a problem of a trial court's imposing a sentence where there was no statutory authority to do so (i.e. nothing existed that would authorize what was done) as opposed to a "common law analysis or a statutory interpretation." Id. at 640. The case before us, however, clearly does involve "a common law analysis or statutory interpretation." Thus, because this case involves a legal issue not rising to the level of a due process violation, it should not be applied to judgments that are final.[1]
The majority relies on the specially concurring opinion of Judge Zehmer in Carpentier in support of the due process basis for the Iacovone decision but does not mention that, even though he assumed the statute punished the attempt more severely than the completed *626 act, Judge Zehmer nevertheless found the statute constitutional as applied to attempted second-degree murder.
Nevertheless, I join in affirming the conviction and decline to hold the statute facially invalid on constitutional grounds because I believe that at the very least the statute puts one on notice that attempting to unlawfully kill a law enforcement officer is a criminal offense punishable as a life felony. Since the circumstances of this offense do not involve the elements of "attempted third degree murder" of a law enforcement officer, I conclude that we are not required to consider any potential constitutional infirmity based on an illogical scheme to punish for attempted murder at a significantly greater level than for third degree murder.
Carpentier v. State, 587 So.2d 1355, 1359 (Fla. 1st DCA 1991). The defendant in this case was convicted of attempted second-degree murder. Thus, what Judge Zehmer found legal, this court, relying on Judge Zehmer, finds illegal. The irony is that based on the majority decision, Mr. Carpentier will now be entitled to the resentencing the First District Court denied him in his own promptly-to-be-filed 3.850 proceeding. This is an especially bizarre outcome given that the supreme court has now explained that "murder" as used in the statute really meant only first-degree murder. Thus, now that the statute has been construed not to mean what Judge Zehmer assumed it meant, the sentence he found sustainable on constitutional grounds will be invalidated by this court on constitutional grounds.
Finally, the majority makes an equal protection argument in support of its decision. Equal protection finds no support in either the Iacovone decision or in Carpentier. With respect, equal protection in the constitutional sense can have nothing to do with this caseunless those persons who attempt to murder law enforcement officers now constitute a "suspect" class of persons entitled to the special protection of the law and heightened scrutiny of any law that disadvantages them.
NOTES
[1] The other grounds raised in the defendant's rule 3.850 motion are either time barred or meritless.
[2] We need not address the question of whether the change is one of "significant" magnitude as defined in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
[1] I confess the distinction between the state prosecuting or punishing a defendant without statutory authority and prosecuting a defendant under an erroneous interpretation of a statute is not one I could drive a truck through, but the distinction appears to exist.