696 So.2d 515 (1997)
Kevin C. HOUSE, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1024.
District Court of Appeal of Florida, Fourth District.
July 8, 1997.
*516 Kevin C. House, Miami, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Kevin House (defendant) appeals the denial of his motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Because we hold that our supreme court's decision in King v. State, 681 So.2d 1136 (Fla.1996), applies to defendant's post-conviction proceedings, we reverse the denial of defendant's motion.

BACKGROUND FACTS
Defendant originally pled nolo contendere to the charge of issuing a worthless check in the amount of $160, in violation of section 832.05, Florida Statutes (1991). This crime is a third-degree felony with a five-year statutory maximum term of imprisonment. Defendant received a guidelines sentence, within the statutory maximum, of two years community control followed by three years probation. Defendant subsequently violated his community control and, on November 8, 1994, the trial court revoked his community control and imposed a ten-year habitual offender sentence of imprisonment. Defendant did not directly appeal this sentence, but within two years after his sentencing became final brought this collateral attack, arguing that the habitual offender sentence, imposed after revocation of his community control, was both unauthorized and illegal pursuant to King.

THE KING DECISION
In King, the trial court, at the time of the original sentencing, declared the defendant to be a habitual offender, but nevertheless sentenced him, within the guidelines, to serve a period of incarceration followed by probation. The defendant subsequently violated his probation and, upon revocation, was sentenced as a habitual felon.
Our supreme court reversed, holding that the imposition of a habitual offender sentence pursuant to section 775.084, Florida Statutes (1995), was not authorized after revocation of probation where a guidelines sentence under section 775.082 was originally imposed. King, 681 So.2d at 1140. According to King, once a trial court exercises its discretion and does not impose a habitual offender sentence upon a qualified habitual offender, any sentence imposed after revocation of the guidelines sentence must comport with the sentencing guidelines and departure rules. Id. at 1139.

RETROACTIVE APPLICATION OF KING

The sole issue on appeal is whether King should be applied retroactively to defendant's case. If King applies, then defendant's ten-year habitual offender sentence, imposed after the revocation of community control, was not only unauthorized by statute, but also illegal as exceeding the statutory maximum penalty for a third-degree felony.[1] *517 See King, 681 So.2d at 1140 (a sentence which is not authorized by statute is also illegal pursuant to rule 3.800 if the total sentence imposed exceeds the statutory maximum for the particular offense); see also § 775.082(3)(d), Fla. Stat. (1995); Judge v. State, 596 So.2d 73 (Fla. 2d DCA 1991) (unless a defendant is classified as a habitual offender, a sentence is illegal if it imposes more than five years incarceration for a third-degree felony).
To determine whether a decision should be retroactively applied, "the fundamental consideration is the balancing of the need for decisional finality against the concern for fairness and uniformity in individual cases." State v. Callaway, 658 So.2d 983, 986 (Fla. 1995) (citing Witt v. State, 387 So.2d 922 (Fla.1980)).[2] To address this consideration, our supreme court developed a three-step analysis in Witt, which it reaffirmed in Callaway. See Callaway, 658 So.2d at 986. According to Witt, in order to retroactively apply a decision to post-conviction proceedings, the change in the law must (1) originate in the United States Supreme Court or the Florida Supreme Court; (2) be constitutional in nature; and (3) have fundamental significance. Callaway, 658 So.2d at 986; Witt, 387 So.2d 922. Thus, to decide the issue of retroactivity here, we must apply this threepart analysis to the decision in King. Because King emanated from our supreme court, the first prong of Witt is satisfied.

IS THE KING DECISION CONSTITUTIONAL IN NATURE?
The second prong of the Witt analysis is more difficult to apply where, as here, the decision of the court is not based on a particular section of the constitution.[3] In determining that the decision in King is constitutional in nature, we are guided by our supreme court's analysis in Callaway of a similar sentencing decision.
In Callaway, our supreme court retroactively applied its decision in Hale v. State, 630 So.2d 521 (Fla.1993). It found the Hale decision to be constitutional in nature, although the Hale court did not directly declare any law unconstitutional.[4] The Hale decision prohibited the imposition of consecutive habitual felony offender sentences for offenses arising out of a single criminal episode. Our supreme court held in Hale that there was "nothing in the language of the habitual offender statute which suggests that the legislature" intended to further enhance the penalty by allowing the sentences to run consecutively. Hale, 630 So.2d at 524.
The Callaway court found the Hale decision to be constitutional in nature because "in the absence of an empowering statute the imposition of consecutive habitual felony offender sentences for offenses arising out of a single criminal episode could not withstand a due process analysis." Callaway, 658 So.2d *518 at 986 (citations omitted) (emphasis supplied). Our supreme court also found that "the decision in Hale significantly impacts a defendant's constitutional liberty interests." 658 So.2d at 986.
Like Callaway, where our supreme court found that consecutive habitual offender sentences were not statutorily authorized, our supreme court found in King that sentencing a defendant under both sections 775.082 and 775.084 is "not authorized by section 775.084" and is "in fact inconsistent with the plain language of the statute." King, 681 So.2d at 1140. Thus, as in Callaway, we find that sentencing an individual as a habitual offender upon revocation of probation where the trial court was not authorized by statute to do so could not "withstand a due process analysis."
Additionally, as our supreme court found in Callaway, imposing a greatly enhanced sentence, which is not statutorily authorized, affects a defendant's liberty interests.[5] Finally, although our supreme court did not reach the double jeopardy issue in King,[6] Judge Benton's partially concurring and partially dissenting opinion in the first district's case, King v. State, 648 So.2d 183, 186-192 (Fla. 1st DCA 1994), analyzes why double jeopardy would be violated by the imposition of a habitual offender sentence upon revocation of probation once a lawful guidelines sentence has already been imposed for the same offense. For all these reasons, we conclude that the King decision is constitutional in nature.[7]

FUNDAMENTAL SIGNIFICANCE OF KING

Elaborating on the third prong of Witt, our supreme court explained in Callaway that decisions having fundamental significance fall into two broad categories: (a) those decisions that "place beyond the authority of the state the power to regulate certain conduct or impose certain penalties" and (b) those that are "of sufficient magnitude to necessitate retroactive application under the threefold test of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)."[8]Callaway, 658 So.2d at 986 (citations omitted).
Stovall requires that the court consider: (i) the purpose to be served by the new rule; (ii) the extent of reliance on the old rule; and (iii) the effect that retroactive application will have on the administration of justice. As in Callaway, we do not decide whether the opinion in King falls into the first category because it satisfies the three-fold test of Stovall.[9]Callaway, 658 So.2d at 987.
First, we find that the purpose of the new rule is to ensure that a habitual offender sentence not be imposed upon revocation of probation when not authorized by statute. See Callaway, 658 So.2d at 987.
*519 As to the second prong of Stovallextent of reliance on the old ruleprior to King, our supreme court had never addressed the issue, and various districts held conflicting views. See, e.g., Welling v. State, 659 So.2d 1284 (Fla. 4th DCA 1995); King, 648 So.2d at 183, quashed, 681 So.2d 1136 (Fla.1996); Davis v. State, 623 So.2d 547 (Fla. 2d DCA 1993). For example, in the second district, the rule prior to King was always that an initial sentence of incarceration without habitual offender status, followed by probation as a habitual offender, was prohibited. Davis. However, our district followed the first district's contrary opinion in King until it was quashed by our supreme court. See Welling, 659 So.2d at 1285
Prior to 1988, when section 775.084, Florida Statutes (1987), was amended, habitual offender sentences were subject to the limitations of the sentencing guidelines. See Callaway, 658 So.2d at 987. Thus, before 1988, a defendant's sentence after revocation of probation would have been limited by the guidelines in any event, and any reliance on a rule contrary to King, by those districts following such a rule, most likely existed only for the eight-year period between 1988 and 1996, when King was decided.
Finally, the retroactive application of King would have a limited impact on the administration of justice. Only habitual offender sentences imposed after revocation of a guidelines sentence must be overturned, not the findings of violations themselves. The courts will only have to resentence defendants and will not have to conduct a new hearing on the violations which led to the revocation of probation or community control. See Callaway, 658 So.2d at 987.
As in Callaway, the administration of justice would be more detrimentally affected if criminal defendants who had the misfortune to be sentenced and who exhausted their direct appeals before King was decided are required to serve significantly longer sentences than similarly situated defendants sentenced after King. See id.

CONCLUSION
Because King meets the factors set forth in Witt and fits within the analysis of Callaway, we conclude that King should be retroactively applied to defendant's sentencing. Thus, we vacate the imposition of the habitual felon sentence after the revocation of defendant's probation, and remand with instructions to the trial court to resentence defendant within the statutory maximum for a third-degree felony.
DELL and FARMER, JJ., concur.
NOTES
[1] In King v. State, 681 So.2d 1136 (Fla. 1996), the defendant had been initially sentenced to a guidelines sentence which included incarceration. Here defendant's initial sentence was a guidelines sentence, which did not include incarceration. The state does not argue that this distinction would render King inapplicable; it only argues that King should not be applied retroactively.
[2] We agree with Judge Altenbernd's observation in Callaway v. State, 642 So.2d 636, 641 n. 4 (Fla. 2d DCA 1994), approved, 658 So.2d 983 (Fla. 1995), that because an illegal sentence can be challenged under rule 3.800 at any time, "we doubt the need to apply a Witt analysis to review a sentence that was truly `illegal' from its inception." In this case, if there has never been statutory authority to impose a habitual offender sentence after revocation of a guidelines sentence, then the habitual offender sentence was not authorized when imposed. However, the supreme court in State v. Callaway, 658 So.2d 983 (Fla. 1995), employed a retroactivity analysis and did not discuss Judge Altenbernd's alternative basis for finding the sentence illegal. Thus, although here the trial court lacked the authority to impose a habitual offender sentence where it did not impose a habitual offender sentence originally, we nevertheless feel compelled by Callaway to employ a retroactivity analysis.
[3] Because courts will avoid reaching the constitutional issue when the decision can be made on other grounds, see The Florida Bar v. Rayman, 238 So.2d 594, 595 (Fla. 1970), it is not unusual for our supreme court to decide an issue on nonconstitutional grounds, even if the constitutional challenge would have independent merit.
[4] Our supreme court in Hale v. State, 630 So.2d 521 (Fla.1993), specifically rejected attacks based on the constitutional arguments of double jeopardy and cruel and unusual punishment.
[5] Judge Griffin notes in her dissent in Stevens v. State, 691 So.2d 622, 625 (Fla. 5th DCA 1997), that determining if a decision is "constitutional in nature" based on whether the decision "significantly impacts a defendant's liberty interest," would "make retroactive virtually any high court decision ... that was favorable to the defendant." Thus, our supreme court's statement in Callaway that a decision "significantly impacts a defendant's liberty interest" should not be taken out of context.
[6] In King, 681 So.2d at 1139 n. 4 (Fla. 1996), our supreme court found it unnecessary to determine whether the sentence would violate the constitutional guarantee against double jeopardy because it concluded that the sentence was unauthorized.
[7] We note the differing approaches of courts since Callaway when addressing whether a sentencing issue is constitutional in nature. See, e.g., Logan v. State, 666 So.2d 260 (Fla. 4th DCA 1996); Gantorius v. State, 693 So.2d 1040 (Fla. 3d DCA 1997); Stevens. We acknowledge Judge Griffin's dissent in Stevens where she discusses the difficulty of drawing a line in cases decided on the basis of statutory construction.
[8] As Judge Klein noted in Logan, 666 So.2d at 262, the United States Supreme Court no longer applies Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in deciding the issue of fundamental significance, but applies the more stringent standard of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Because our supreme court nonetheless applied Stovall in Callaway, we apply it here.
[9] An example of this first category, cited in Witt, is Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), which held that the imposition of the death penalty for the crime of rape is forbidden by the Eighth Amendment as cruel and unusual punishment.