714 So.2d 347 (1998)
STATE of Florida, Petitioner,
v.
Solomon STEVENS, Respondent.
Solomon STEVENS, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 90524, 90863.
Supreme Court of Florida.
March 26, 1998.
Rehearing Denied June 15, 1998.
Robert A. Butterworth, Attorney General, and Belle B. Turner, Assistant Attorney General, Daytona Beach, for Petitioner/Respondent.
Solomon Stevens, pro se, Bushnell, for Respondent/Petitioner.
SHAW, Justice.
We have for review Stevens v. State, 691 So.2d 622 (Fla. 5th DCA 1997), wherein the district court certified:
Whether State v. Iacovone, 660 So.2d 1371 (Fla.1995), must be applied retroactively.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative as explained herein and approve the result in Stevens on this issue.
Stevens was convicted of attempted second-degree murder of a law enforcement officer and was sentenced to life imprisonment with a twenty-five year mandatory minimum term pursuant to sections 784.07[1] and 775.0825,[2] Florida Statutes (Supp.1988). In a subsequent case, this Court ruled that application of these statutes to the crimes of *348 attempted second- and third-degree murder yields absurd results.[3]State v. Iacovone, 660 So.2d 1371 (Fla.1995). We limited the statutes' scope to attempted first-degree murder. Id. Based on this ruling, Stevens filed a rule 3.850 motion to correct his sentence, which the trial court denied. The district court applied Iacovone retroactively, reversed the trial court's order denying relief, and certified the above question. Both Stevens and the State sought review.
We agree with the district court's conclusion that Iacovone meets the three-part test for retroactive application of a change in decisional law set forth in Witt v. State, 387 So.2d 922 (Fla.1980): The decision in Iacovone (a) emanates from this Court, (b) implicates matters that are constitutional in nature, and (c) constitutes a development of fundamental significance. See Stevens, 691 So.2d at 623-24. Indeed, imposition of a hefty criminal sentence pursuant to a patently "irrational" sentencing scheme "could not withstand a due process analysis" of any sort. State v. Callaway, 658 So.2d 983, 986 (Fla. 1995). "The concern for fairness and uniformity in individual cases outweighs any adverse impact that retroactive application of the rule might have on decisional finality." Id. at 987.
The present case differs significantly from State v. Gray, 654 So.2d 552 (Fla.1995), which we recently held does not apply retroactively.[4] The statutory offense there, attempted felony murder, had been held by the Court to be a valid offense for years before we concluded in Gray it had become too difficult to apply.[5] Retroactive application would have been inappropriate because persons convicted previously had been convicted of a valid offense.[6] The enhancement provisions here, on the other hand, have been held by the Court to be inapplicable to second-and third-degree murder from the beginning.[7] Persons sentenced under this scheme were subjected to an "irrational" punishment that was invalid ab initio. Retroactive application thus is required under Witt.
Based on the foregoing, we answer the certified question in the affirmative as explained herein and approve the result in Stevens on this issue.[8]
It is so ordered.
KOGAN, C.J., OVERTON and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
HARDING, J., concurs with an opinion, in which ANSTEAD, J., and GRIMES, Senior Justice, concur.
WELLS, J., dissents with an opinion.
*349 HARDING, Justice, concurring:
I write in this case for two reasons. First, I believe that this Court could clear up some of the confusion in the lower courts regarding which cases are "constitutional in nature." In addition, I think it is important that State v. Iacovone, 660 So.2d 1371 (Fla. 1995), be distinguished from State v. Gray, 654 So.2d 552 (Fla.1995).
The majority states that Iacovone meets the three-prong test of Witt v. State, 387 So.2d 922 (Fla.1980), the test used to determine whether or not a case should be applied retroactively. I agree. In order to meet the Witt test, a case must (1) emanate from the United States Supreme Court or the Florida Supreme Court, (2) be constitutional in nature, and (3) constitute a development of fundamental significance. Witt, 387 So.2d at 931. Clearly, Iacovone emanated from this Court, therefore satisfying the first prong of the Witt test. However, the second prong of Witt is more difficult to apply. Some cases are clear examples of opinions which are constitutional in nature, because the opinion expressly states the section of the constitution that is violated by the statutory offense. This is in contrast to other cases, such as Iacovone, where the decision clearly provides that the basis for the opinion is not on any constitutional grounds. There has been disagreement in the district courts as to whether these types of cases are constitutional in nature. See House v. State, 696 So.2d 515 (Fla. 4th DCA 1997) (holding that King v. State, 681 So.2d 1136 (Fla.1996), was constitutional in nature even though that decision was not based on a particular section of the constitution); Stevens v. State, 691 So.2d 622, 625 (Fla. 5th DCA 1997) (Griffin, J., dissenting) (questioning whether a decision can be constitutional in nature when the decision specifically holds that it is not decided on any constitutional basis). Many courts have relied on State v. Callaway, 658 So.2d 983 (Fla.1995), wherein this Court held that Hale v. State, 630 So.2d 521 (Fla.1993), should be applied retroactively. It was not clear from the Hale opinion whether that case was decided on constitutional grounds. Nevertheless, we concluded in Callaway that Hale satisfied the second prong of Witt. Callaway, 658 So.2d at 986.
I would resolve this conflict by holding that the "constitutional in nature" prong of the Witt test does not require that the opinion in question be decided on constitutional grounds. Indeed, many opinions by this Court are decided on nonconstitutional grounds, even if a constitutional claim may have merit. This is due to the principle that courts will avoid reaching a constitutional issue in a case when the decision can be made on other grounds. Singletary v. State, 322 So.2d 551, 552 (Fla.1975) ("[W]e adhere to the settled principle of constitutional law that courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds."). It follows that if a decision were required to be decided on constitutional grounds in order to meet the second prong of the Witt test, this Court would be precluded from giving retroactive application to decisions which are clearly constitutional in nature but were mandatorily decided on other grounds.
This does not mean that every case that invalidates a statutory offense based on statutory construction grounds will be constitutional in nature. Rather, if a party is seeking to have an opinion applied retroactively, a court must reanalyze the case through a constitutional lens to determine if the case really was constitutional in nature.
Applying this concept to Iacovone, I conclude that our decision was constitutional in nature. In a footnote to Iacovone, we alluded to the fact that applying sections 784.07(3) and 775.0825 to second- and third-degree murder violates due process, because "the guarantee of due process requires that the means selected shall have a reasonable and substantial relation to the object sought to be [attained]." Iacovone, 660 So.2d at 1373 n. 1 (quoting State v. Saiez, 489 So.2d 1125, 1128 (Fla.1986)). The opinion in Iacovone reasoned that allowing section 784.07(3) and 775.0825 to apply to second- and third-degree murder would punish attempts more severely than the completed crime of murder, a means which certainly is not related to the object of discouraging lethal attacks. Based on this *350 logic, I conclude that Iacovone meets the second prong of the Witt test.
To meet the third prong of the Witt test, a decision must be a change of "fundamental significance." We stated in Callaway that there are two categories of cases that are changes of fundamental significance: (a) those opinions that "place beyond the authority of the state the power to regulate certain conduct or impose certain penalties" and (b) those opinions that are `of sufficient magnitude to necessitate retroactive application' under the threefold test of Stovall v. Denno, 388 U.S. 293 [ 87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967)." Callaway, 658 So.2d 983, 986-87 (Fla.1995) (quoting Witt, 387 So.2d at 929). Under the Stovall test, a court is to consider: (i) the purpose to be served by the new rule, (ii) the extent of reliance on the old rule, and (iii) the effect on the administration of justice of a retroactive application of the new rule. Callaway, 658 So.2d at 987.
To determine whether Iacovone meets the third prong of Witt, it is necessary to apply the Stovall factors to that decision. First, the purpose of the rule announced in Iacovone was to prohibit the maximum penalty for an attempt from being greater than that for the completed crime. Second, the reliance on the old rule in this area was minimal. Section 784.07(3) became effective on October 1, 1988, and was struck down on June 8, 1995a period of only a little more than six years. The old rule had never been approved by this Court before, and very few district courts had ruled on the subject. See generally Carpentier v. State, 587 So.2d 1355 (Fla. 1st DCA 1991) (denying a vagueness claim to section 784.07(3)); Gantorius v. State, 620 So.2d 268 (Fla. 3d DCA 1993) (citing to Carpentier in a per curiam affirmance of Gantorius's conviction of attempted second-degree murder of a law enforcement officer). Finally, there would only be a slight impact on the administration of justice if this rule were given retroactive application. The change would not require new trials or affect convictions, but would only require the trial courts to resentence the defendants who were sentenced under the old rule.
An example of a case that does not satisfy the third prong of Witt is State v. Gray, 654 So.2d 552 (Fla.1995). In Gray, we held that the crime of attempted felony murder was logically impossible. We recently decided that Gray should not be applied retroactively. See State v. Woodley, 695 So.2d 297 (Fla.1997).[9] Although Gray was decided by this Court, and may have involved matters that were constitutional in nature, it was not a change of fundamental significance, especially in light of the three Stovall factors. The purpose of the rule announced in Gray was to prevent the State from obtaining a conviction of a crime which necessitates the finding of an intent without having to prove intent. However, the law in Gray had been in effect for approximately eleven years[10] and had been upheld by this Court on a previous occasion. See Amlotte v. State, 456 So.2d 448 (Fla.1984). There was extensive reliance on the old rule, which created settled expectations regarding the law in this area. In addition, a retroactive application of the decision in Gray would have a negative impact on the administration of justice. Because the law had been valid for such a long period of time, numerous individuals were convicted under it. Retroactive application would require hundreds of new trials, which would require expensive and timely preparation for old cases and necessitate the relocating of witnesses and evidencein some cases for crimes that occurred a decade before. When all of these factors are considered together, it becomes obvious that Gray does not meet the "change of fundamental significance" prong of the Witt test because of the negative impact that such a change would have on the administration of justice. For these reasons, Gray was not applied retroactively. Anytime a court wrestles with the question of whether or not a case should be applied retroactively, there are two competing interests: the interest of decisional finality on the one hand, as compared to the *351 interest of individual fairness on the other. In some cases, where the strain on the system would be so great if retroactive application were to be givenbased in part on the reliance on the old rule, the interest of decisional finality prevails over all other interests. Gray is a classic example of this kind of case.
I acknowledge that it will not always be a clear cut distinction between those cases that will have a significant impact on the administration of justice and those cases that do not. Many times a court will have to weigh the considerations of the two opposing interests. Therefore, it is incumbent on every party who is arguing this claim to submit evidence as to the type of burden that a retroactive application would have on the judicial system.
In conclusion, this analysis of Iacovone demonstrates that the case meets all three prongs of the Witt test. Accordingly, I agree with the majority that Iacovone should be applied retroactively.
ANSTEAD, J., and GRIMES, Senior Justice, concur.
WELLS, Justice, dissenting.
I agree with Judge Griffin's dissent in the district court. I fear that this decision will prove exceedingly difficult in future application to a never-ending variety of statutory construction situations.
NOTES
[1] Section 784.07 makes the crime of attempted murder of a law enforcement officer a life felony:

Notwithstanding the provisions of any other section, any person who is convicted of attempted murder of a law enforcement officer engaged in the lawful performance of his duty or who is convicted of attempted murder of a law enforcement officer when the motivation for such attempt was related, all or in part, to the lawful duties of the officer, shall be guilty of a life felony, punishable as provided in s. 775.0825.
§ 784.07(3), Fla. Stat. (Supp.1988).
[2] Section 775.0825 provides for a twenty-five year mandatory minimum term of imprisonment for attempted murder of a law enforcement officer:

Any person convicted of attempted murder of a law enforcement officer as provided in s. 784.07(3) shall be required to serve no less than 25 years before becoming eligible for parole. Such sentence shall not be subject to the provisions of s. 921.001 [of the sentencing guidelines].
§ 775.0825, Fla. Stat. (Supp.1988).
[3] The Court noted the discrepancy that arises when the above statutes are applied to attempted second- and third-degree murder:

The discrepancy recognized by the district court is apparent in this scheme in that the penalty for attempted third-degree murder of a law enforcement officer (i.e., life or forty years with a twenty-five year mandatory minimum) is vastly greater than the penalty for completed third-degree murder of a law enforcement officer (i.e., fifteen years with a fifteen year mandatory minimum). Further, the penalty for attempted second-degree murder of a law enforcement officer (i.e., life or forty years with a twenty-five year mandatory minimum) is significantly greater than the penalty for completed second-degree murder of a law enforcement officer (i.e., thirty years with a twenty-five year mandatory minimum).
State v. Iacovone, 660 So.2d 1371, 1373 (Fla. 1995). Under such a scheme, "a criminal who attempts to murder a law enforcement officer would have a substantial incentive to complete the act in order to avoid exposure to the harsher penalty. The State's interpretation thus would seem to encourage, not discourage, lethal attacks [against law enforcement officers]. This is an irrational result." Id.
[4] See State v. Woodley, 695 So.2d 297 (Fla.1997).
[5] See Amlotte v. State, 456 So.2d 448 (Fla.1984).
[6] See State v. Wilson, 680 So.2d 411, 412 (Fla. 1996) ("[A]ttempted felony murder was a valid offense, with enumerated elements and identifiable lesser offenses, for approximately eleven years. It only became `nonexistent' when we decided Gray."). Gray did not implicate matters that were constitutional in nature but rather marked an "evolutionary refinement[] in the criminal law" governing attempts. Witt, 387 So.2d at 929.
[7] See Iacovone, 660 So.2d at 1374 ("We hold that sections 784.07(3) and 775.0825 apply only to first-degree murder.").
[8] We find that the remaining issues raised by Stevens in his pro se briefs are either procedurally barred or without merit.
[9] In State v. Woodley, 695 So.2d 297 (Fla.1997), this Court did not conduct a Witt analysis. However, had we done so, it presumably would have failed that test based on the third prong.
[10] See State v. Wilson, 680 So.2d 411, 412 (Fla. 1996) ("Here, attempted felony murder was a valid offense, with enumerated elements and identifiable lesser offenses, for approximately eleven years.").