730 So.2d 265 (1999)
Gregory R. DIXON, Petitioner,
v.
STATE of Florida, Respondent.
No. 91,370
Supreme Court of Florida.
February 4, 1999.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida, for Petitioner
Robert A. Butterworth, Attorney General and Roberta G. Mandel, Assistant Attorney General, Miami, Florida, for Respondent
PARIENTE, J.
We have for review a decision addressing the following question certified to be of great public importance:
WHETHER APPELLANT'S RULE 3.850 MOTION SEEKING RETROACTIVE BENEFIT OF HALE V. STATE, 630 So.2d 521 (Fla.1993), SHOULD BE DEEMED TIMELY FILED WHERE: (1) APPELLANT SOUGHT HALE RELIEF PRIOR TO THE ANNOUNCEMENT OF [STATE V.] CALLAWAY [658 So.2d 983 (Fla.1995)], AND RELIEF WAS DENIED; AND (2) APPELLANT FILED ANOTHER MOTION FOR POSTCONVICTION RELIEF, BASED ON HALE, WITHIN TWO YEARS AFTER CALLAWAY WAS ANNOUNCED.
Dixon v. State, 697 So.2d 966, 967 (Fla. 3d DCA 1997). We have jurisdiction, see art. V, § 3(b)(4), Fla. Const., and we rephrase the certified question as follows:
WHETHER A DEFENDANT'S RULE 3.850 MOTION SEEKING THE RETROACTIVE APPLICATION OF HALE WAS TIMELY WHEN FILED WITHIN TWO YEARS FROM THE DATE THE MANDATE ISSUED IN THIS COURT'S OPINION IN CALLAWAY, WHICH ANNOUNCED *266 THE RETROACTIVITY OF HALE.

As rephrased, we answer the question in the affirmative and quash the decision below. We also recede from our opinion in Callaway to the limited extent that it utilized the Hale decision as the basis for calculating the two-year window in which an eligible defendant could seek Hale relief. See Callaway, 658 So.2d at 987.
On April 23, 1991, Gregory R. Dixon received consecutive habitual felony offender sentences totaling sixty years for convictions allegedly arising from the same criminal episode (thirty years for attempted manslaughter with a firearm and thirty years for aggravated battery with a firearm). On direct appeal in 1992, the Third District affirmed without opinion. See Dixon v. State, 605 So.2d 179 (Fla. 3d DCA 1992).
On October 14, 1993, this Court issued its decision in Hale, holding that the habitual offender statute did not authorize the imposition of consecutive habitual felony offender sentences for multiple crimes committed during a single criminal episode. 630 So.2d at 525. Hale did not address the retroactive application of its holding, because that issue was not before the Court. We denied rehearing in Hale on February 9, 1994. Id. at 521.
On August 12, 1994, while a petition for certiorari review was pending in the United States Supreme Court in Hale, Dixon filed a pro se motion seeking postconviction relief from his consecutive habitual offender sentences pursuant to Hale. The trial court summarily denied his motion. The Third District affirmed that denial without written opinion. See Dixon v. State, 652 So.2d 827 (Fla. 3d DCA 1995). As the Third District stated in its opinion below, "the most reasonable explanation for that denial is the assumption that Hale would not be retroactive." Dixon, 697 So.2d at 967.
On July 20, 1995, this Court issued its decision in Callaway holding that Hale should be applied retroactively. Callaway, 658 So.2d at 987. In so deciding, this Court held that "a two-year window following this Court's decision in Hale shall be provided for criminal defendants to challenge the imposition of consecutive habitual felony offender sentences for multiple offenses arising out of a single criminal episode." Id.
Thereafter, on August 11, 1996, Dixon filed a second 3.850 motion seeking relief under Hale. See Dixon, 697 So.2d at 967. The trial court denied relief, and the Third District affirmed, finding that Dixon was
in the position of having raised the Hale issue both too early and too late. His initial Rule 3.850 motion raised the Hale issue, but did so at a time when Hale had not been held [in Callaway ] to be retroactive.
Id.
The problem raised by the Third District stems from our statement in Callaway that defendants would have "a two-year window following this Court's decision in Hale" in which to seek Hale relief. Callaway, 658 So.2d at 987. The appellate courts confronting this issue have construed our language as giving defendants two years to bring a Hale claim calculated either from the date our Hale opinion issued, October 14, 1993,[1] or the date we denied rehearing, February 9, 1994.[2] Using either date results in a short window due to the length of time that elapsed between our decision in Hale and our decision in Callaway. If the date of our opinion in Hale is used, eligible defendants would have had only an additional three months to bring *267 their claim after we decided the issue of retroactivity in Callaway. Similarly, if the date we denied rehearing in Hale is used, defendants would have had only an additional six months after the issue of retroactivity was decided to bring their claims.
The Third District concluded that "Callaway's calculation of the window may be frustrating the intent, owing to the short window period following the announcement of Callaway." Dixon, 697 So.2d at 967. We agree. Our intent in Callaway was to provide for the retroactive application of Hale and to allow eligible defendants a reasonable time within which to file for postconviction relief.
Our underlying concerns in Callaway were fundamental fairness and uniformity in sentences between similarly situated prisoners. As expressed by both Judge Altenbernd writing for the Second District in Callaway v. State, 642 So.2d 636, 641 (Fla. 2d DCA 1994), approved, 658 So.2d 983 (Fla.1995), and by Justice Grimes writing for this Court in Callaway, 658 So.2d at 987, the failure to give Hale retroactive application would result in some prisoners serving sentences twice as long as those imposed on similarly situated prisoners.
In Callaway, Justice Grimes concluded that the "decision in Hale significantly impacts a defendant's constitutional liberty interests," and that:
[The] retroactive application of the rule announced in Hale will have no serious adverse effect upon the administration of justice. Courts will not be required to overturn convictions or delve extensively into stale records to apply the rule. The administration of justice would be more detrimentally affected if criminal defendants who had the misfortune to be sentenced during the six year window between the amendment of section 775.084 and the decision in Hale are required to serve sentences two or more times as long as similarly situated defendants who happened to be sentenced after Hale.

658 So.2d at 987 (citation omitted) (emphasis supplied). In Dixon's case, if the Hale relief Dixon seeks is ultimately granted, his overall sentence of sixty years would be halved to thirty years.
Before a decision such as Hale is applied retroactively to convictions and sentences that are already final, the decision must meet the stringent criteria of Witt v. State, 387 So.2d 922, 928-29 (Fla.1980), which is a relatively rare occurrence. See State v. Glenn, 558 So.2d 4, 7 (Fla.1990) (discussing the rarity of retroactive application and listing opinions we have refused to apply retroactively). In the limited number of decisions that are retroactively applied, we have determined that concerns for basic fairness and uniformity of treatment among similarly situated defendants outweigh any adverse impact that retroactive application of the rule might have on decisional finality. See Callaway, 658 So.2d at 987.
We conclude that these concerns also compel a conclusion that it is appropriate to utilize the date of our decision announcing retroactivity, specifically the date of this Court's mandate,[3] as the beginning date for calculating the additional two-year window. An unbending rule providing that claims must be filed within two years after our original opinion announcing a change of law, rather than two years after our opinion announcing retroactive application of the change in law, simply does not comport with the policy reasons underlying our decision to give a prior opinion retroactive application to convictions and sentences that are already final.
Our decision to utilize the date of the issuance of the mandate in the case in which we announce retroactivity as the basis for calculating a cut-off period for postconviction claims is consistent with the intent of Adams v. State, 543 So.2d 1244, 1247 (Fla.1989), that defendants must file rule 3.850 motions within two years of any fundamental change in law. Only when we decide the issue of retroactivity do we announce whether the change of law has "fundamental significance" and accordingly constitutes a "fundamental *268 change of law" entitled to retroactive application.
We also create potential problems for the lower courts and the defendants affected by our decision when we calculate the two-year period under rule 3.850 from the time that we announce the change of law (Hale), rather than from the time that we determine that the change of law should have retroactive application (Callaway). If defendants file their claims pursuant to rule 3.850 before the issue of retroactivity is decided, their claims may be summarily denied, as was the case with Dixon, providing for no further avenue of appellate review.
In this interim period, defendants who are directly affected by the change of law may end up in legal limbo, despite their best efforts to enforce their rights. Many of these defendants are unrepresented, further compounding the difficulty. One aspect of this difficulty includes the disparate treatment of similarly situated defendants by the appellate courts.[4]
These problems are especially apparent when there is a considerable time lapse between the date this Court (or the United States Supreme Court) announces the change of law, and the date this Court later decides that the decision should be given retroactive application to defendants seeking postconviction relief. In Adams, the two-year time period was calculated from the date the change of law was announced. However, the change of law at issue in Adams had been announced by the United States Supreme Court in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and the retroactive application of the decision was announced by our Court only four months later in Thompson v. Dugger, 515 So.2d 173 (Fla.1987). Therefore, in Adams our Court was not confronted with a significant time lapse between the initial opinion announcing the change of law and the later opinion announcing retroactive application.
In contrast, a lapse of nearly two years occurred between the initial decision announcing the change of law in Hale and our opinion announcing its retroactive application in Callaway. Further, in some cases the time lapse has been in excess of two years. See, e.g., State v. Stevens, 714 So.2d 347 (Fla.), cert. denied, ___ U.S. ___, 119 S.Ct. 452, 142 L.Ed.2d 405 (1998) (gap of three years between opinion announcing change of law in State v. Iacovone, 660 So.2d 1371 (Fla.1995), and Stevens announcing retroactive application of Iacovone); Bass v. State, 530 So.2d 282 (Fla.1988) (gap of five years between opinion announcing change of law in Palmer v. State, 438 So.2d 1 (Fla.1983), and Bass announcing retroactive application of Palmer).[5] If the two-year limit were calculated from the date of the initial decision announcing the change of law and more than two years elapsed before our later decision to grant retroactive application of that change of law, we would have effectively foreclosed the possibility of relief for those defendants who had not already filed their claims before the decision announcing retroactivity.
In view of the limited number of opinions that are given retroactive effect and the uncertainty that exists over whether a particular decision will be accorded retroactive effect, we consider it reasonable to calculate the two-year time period for eligible defendants *269 to file their claims from the time our decision announcing retroactivity becomes final. This principle not only comports with rule 3.850, but also provides a reasonable time period for all eligible petitioners to file their claims, including those whose claims were rejected before the decision on retroactivity was announced. In addition, this principle promotes fairness and uniformity without expanding the class of eligible defendants (those sentenced between 1988 and 1994)[6] and without causing an adverse effect upon the administration of justice. See Callaway, 658 So.2d at 986; see also Stevens, 714 So.2d at 350-51 (Harding, J., concurring).
Accordingly, we recede from our statement in Callaway only to the extent it announces a contrary time period for calculating the window for cutting off the filing of claims, see Callaway, 658 So.2d at 987, and recede from Adams, 543 So.2d at 1244, only to the extent that it can be read as mandating the calculation of the two-year time limit from the date our opinion in Hale issued. Based on our decision in this case, defendants whose Hale claims were summarily rejected prior to Callaway would have had two years after our mandate in Callaway to refile their claims.
Our decision renders Dixon's renewed 3.850 motion timely because it was filed within two years of August 16, 1995, the date of our mandate in Callaway. Our decision also renders timely the motions of the defendants in Jackson v. State, 707 So.2d 339 (Fla.1st DCA 1998), Dukes v. State, 703 So.2d 498 (Fla.1st DCA 1997), and Sikes v. State, 683 So.2d 599 (Fla.2d DCA 1996),[7] all or whom also filed their motions within two years of the Court's mandate in Callaway. We accordingly quash the decision below and remand to the district court with directions that the trial court consider the merits of Dixon's 3.850 motion.
It is so ordered.
HARDING, C.J., SHAW, WELLS and ANSTEAD, JJ., and OVERTON and KOGAN, Senior Justices, concur.
NOTES
[1] The First District in Jackson v. State, 707 So.2d 339, 340 (Fla. 1st DCA 1998), and Dukes v. State, 703 So.2d 498, 499 (Fla. 1st DCA 1997), and the Second District in Sikes v. State, 683 So.2d 599, 599-600 (Fla. 2d DCA 1996), construed our language in State v. Callaway, 658 So.2d 983, 987 (Fla.1995), to mean that the two-year window should be calculated from October 14, 1993, the date this Court issued its opinion in Hale v. State, 630 So.2d 521 (Fla.1993). However, the Second District's statement in Sikes is contrary to its previous dicta contained in a footnote in Lock v. State, 668 So.2d 1081, 1081 n. 1 (Fla. 2d DCA 1996), utilizing the date of rehearing in Hale.
[2] The Third District in Dixon v. State, 697 So.2d 966, 967 (Fla. 3d DCA 1997), citing to dicta in Lock, 668 So.2d at 1081 n. 1, stated that the two-year window in which to bring Hale claims should be calculated from the date this Court denied rehearing in Hale on February 9, 1994.
[3] An opinion of this Court becomes final upon issuance of the mandate. See Beaty v. State, 701 So.2d 856, 857 (Fla.1997).
[4] The disparate ways the courts treated the claims of Dixon and Callaway, who were both unrepresented, is illustrative. Both Dixon and Callaway filed their initial motions seeking relief under Hale in 1994, within two years of Hale. Both motions were summarily denied by the respective trial courts. However, Dixon's appeal was affirmed without opinion, giving Dixon no further avenue of relief. In contrast, Callaway's appeal resulted in a written opinion by Judge Altenbernd, reversal of the trial court's summary denial, and a recognition of the retroactive application of Hale. See Callaway v. State, 642 So.2d 636 (Fla. 2nd DCA 1994), approved, 658 So.2d 983 (Fla.1995).
[5] If this Court would announce whether its decision is to be given retroactive application at the time it announces the change of law, this would solve the problem created by the lapse. However, we have not generally done this in the past. In many cases, the issue of retroactive application may not have been raised by the parties. This is especially likely when we announce the change of law in the context of a direct appeal, as we did in Hale, rather in the context of postconviction relief.
[6] "[A]ny reliance on the belief that habitual offender sentences could be imposed consecutively for multiple offenses committed during a single criminal episode could only have existed during the six-year period between the 1988 amendment of section 775.084 and this Court's 1994 decision in Hale." Callaway, 658 So.2d at 987.
[7] We reiterate that in order to receive the benefit of our decision today, defendants must have already filed their 3.850 motion seeking Hale relief, at the very latest, within two years of the date our mandate in Callaway issued on August 16, 1995. If a defendant filed within this period, his claim will have been preserved.