835 So.2d 248 (2002)
STATE of Florida, Petitioner,
v.
David KLAYMAN, Respondent.
No. SC00-1723.
Supreme Court of Florida.
November 14, 2002.
Rehearing Denied January 10, 2003.
*250 Robert A. Butterworth, Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and August A. Bonavita, Assistant Attorney General, West Palm Beach, FL, for Petitioner.
R. Mitchell Prugh of Middleton & Prugh, P.A., Melrose, FL, for Respondent.
SHAW, J.
We have for review Klayman v. State, 765 So.2d 784 (Fla. 4th DCA 2000), wherein the district court certified the following question:
Should the supreme court's decision in Hayes v. State, [750 So.2d 1 (Fla.1999)] be retroactively applied?
Klayman, 765 So.2d at 785. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

I. FACTS
The relevant facts are set forth in the district court opinion, which provides in part:
David Klayman appeals the trial court's denial of his motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. He contends that the court erred in failing to apply the supreme court's recent decision of Hayes v. State, 750 So.2d 1 (Fla. 1999), to his conviction of trafficking in hydrocodone....
In Hayes, the supreme court quashed this court's decision in the underlying case of State v. Hayes, 720 So.2d 1095 (Fla. 4th DCA 1998), quashed, 750 So.2d 1 (Fla.1999), and held that the drug trafficking statute (section 893.135(1)(c)1, Florida Statutes (Supp. 1996)) did not apply to possession of hydrocodone in amounts under fifteen milligrams per dosage unit. Appellant argues that the supreme court's decision in Hayes should be given retroactive application because the effect of the decision has constitutional ramifications for those persons whose sentence was rendered or upheld pursuant to State v. Baxley, 684 So.2d 831, 832-33 (Fla. 5th DCA 1996), and our decision in State v. Hayes.

Klayman, 765 So.2d at 784-85. The district court agreed with Klayman, reversed the trial court's ruling, and remanded for an evidentiary hearing to determine the continued validity of Klayman's sentence in light of Hayes. The district court certified the above question and the State petitioned for review before this Court.

II. HAYES V. STATE

The Court in Hayes v. State, 750 So.2d 1 (Fla.1999), was confronted with the following question: whether a person who fraudulently procured forty tablets of Lorcet, a prescription pain relief medication containing a mixture of acetaminophen and hydrocodone, can be convicted of trafficking if the hydrocodone in the mixture was not a Schedule I or II drug. The trafficking statute prohibited the purchase of four grams or more of "any morphine, opium, oxycodone, hydrocodone, hydromorphone... as described in [Schedule I] or [Schedule II]" or four grams or more of "any mixture containing any such substance."[1]
*251 Prior to Hayes, Florida district courts were in disagreement as to the meaning of the word "such" in the phrase "any mixture containing any such substance." The Fourth and Fifth District Courts of Appeal had held that "such" referred to any of the drugs enumerated in the statute (i.e., "morphine, opium, oxycodone, hydrocodone, hydromorphone"), regardless of their chemical forms.[2] The First and Second District Courts of Appeal, on the other hand, had held that "such" referred to the enumerated drugs but only when those drugs are in the chemical forms described in Schedules I and II.[3]
This Court in Hayes analyzed the language in the trafficking statute, endorsed the view of the First and Second District Courts of Appeal, and held that the word "such" referred to the enumerated drugs only in the chemical forms described in Schedules I and II. The Court then determined that, under the applicable drug classification statutes, hydrocodone may be either a Schedule II or III drug, depending on the dosage unit, and that the hydrocodone in the mixture possessed by Hayes was a Schedule III drug. Because the mixture possessed by Hayes did not contain a Schedule I or II drug, she could not be convicted of trafficking.[4]
The basic holding of Hayes is that the trafficking statute, since the time of enactment, was intended to apply only to Schedule I and II drugs or to mixtures containing Schedule I or II drugs. The question posed in the present case is whether that holding should be applied to final cases wherein the lower courts construed the statute differently and imposed trafficking convictions based on mixtures that did not contain a Schedule I or II drug. This issue is a pure question of law, subject to de novo review.[5]

III. CLARIFICATIONS IN THE LAW
The United States Supreme Court in Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), held that whereas a change in the law may be analyzed in terms of retroactivity, a clarification in the law does not implicate the issue of retroactivity. Petitioner Fiore was convicted of violating a Pennsylvania statute prohibiting the operation of a hazardous waste facility without a permit, even though the Commonwealth conceded that he in fact possessed a permit.[6] The state supreme court declined review and the conviction became final. Subsequently, the state supreme court reviewed the case of Fiore's codefendant, Scarpone, and held, on identical facts, that the statute had not been violated.
*252 The United States Supreme Court granted certiorari in Fiore's case and, after soliciting a response from the Pennsylvania Supreme Court, ruled as follows:
The Pennsylvania Supreme Court's reply specifies that the interpretation of [the statute] set out in Scarpone "merely clarified" the statute and was the law of Pennsylvaniaas properly interpretedat the time of Fiore's conviction. Because Scarpone was not new law, this case presents no issue of retroactivity. Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit.
This Court's precedents make clear that Fiore's conviction and continued incarceration on this charge violate due process. We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. In this case, failure to possess a permit is a basic element of the crime of which Fiore was convicted. And the parties agree that the Commonwealth presented no evidence whatsoever to prove that basic element. To the contrary, the Commonwealth, conceding that Fiore did possess a permit, necessarily concedes that it did not prove he failed to possess one.
The simple, inevitable conclusion is that Fiore's conviction fails to satisfy the Federal Constitution's demands.
Fiore, 531 U.S. at 228-29, 121 S.Ct. 712 (citations omitted).
It thus is clear under Fiore that, if a decision of a state's highest court is a clarification in the law, due process considerations dictate that the decision be applied in all cases, whether pending or final, that were decided under the same version (i.e., the clarified version) of the applicable law. Otherwise, courts may be imposing criminal sanctions for conduct that was not proscribed by the state legislature.
Although Florida courts have not previously recognized the Fiore distinction between a "clarification" and "change," we conclude that this distinction is beneficial to our analysis of Florida law. Previously, this Court analyzed such cases strictly under Witt v. State, 387 So.2d 922 (Fla.1980), and used the term "change" broadly to include what in fact were both clarifications and true changes.[7] As explained in Fiore, however, a simple clarification in the law does not present an issue of retroactivity and thus does not lend itself to a Witt analysis.[8] Whereas Witt remains applicable *253 to "changes" in the law, Fiore is applicable to "clarifications" in the law.

IV. THE PRESENT CASE
In an effort to determine whether Hayes should be applied retroactively, we must ask, is Hayes a "clarification" or "change" in the law? A clarification is a decision of this Court that says what the law has been since the time of enactment. To determine whether a decision clarifies a statute, we first look to the decision itself to discern its intent. If the decision is silent or ambiguous on this point, we then look to the underlying statute to discern its intent. Where the Legislature cedes no discretion to the courts either directly[9] or indirectly[10] but instead employs definitive language that ordinarily requires no judicial construction, the Legislature intends that the statute be applied as enacted. A decision by this Court confirming the original intent is a clarification of extant law.
Hayes is such a clarification, because the Legislature, in formulating the trafficking statute, ceded no discretion to the courts either directly or indirectly with regard to the types and quantities of substances proscribed by the statute. Rather, the Legislature defined those properties with specificity at the time of enactment:
(c)1. Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 4 grams or more of any morphine, opium, oxycodone, hydrocodone, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in s. 893.03(1)(b) [i.e., Schedule I] or (2)(a) [i.e., Schedule II], or 4 grams or more of any mixture containing any such substance, but less than 30 kilograms of such substance or mixture, commits a felony of the first degree, which felony shall be known as "trafficking in illegal drugs."
§ 893.135(1)(c)1, Fla. Stat. (Supp.1996).[11]
Each proscribed substance is identified in the statute and then defined in detail in Schedules I and II, which contain exhaustive technical descriptions of illegal drugs. Also, the proscribed quantities are clearly denoted in the trafficking statute itself: "4 grams or more" of any of the enumerated substances, or "4 grams or more of any mixture containing any such substance, but less than 30 kilograms of such substance *254 or mixture." The Legislature thus intended at the time of enactment for the courts to apply the trafficking statute strictly as written with regard to the types and quantities of proscribed substances.
The decision in Hayes is similar to the following cases cited above as clarifications in the law under Fiore:
(1) State v. Iacovone, 660 So.2d 1371 (Fla.1995) (holding that enhanced penalties for attempted second- and third-degree murder of a law enforcement officer were not authorized by statute); (2) Hale v. State, 630 So.2d 521 (Fla. 1993) (holding that consecutive habitual offender sentences for crimes arising from a single criminal episode were not authorized by statute); and (3) Palmer v. State, 438 So.2d 1 (Fla.1983) (holding that consecutive mandatory minimum sentences for use of a firearm in crimes arising from a single criminal episode were not authorized by statute).
Supra note 8.
In the above cases, the Legislature used language that was intended to be clear on its face. The problem in those cases arose when lower courts construed the statutory language in a manner that was contrary to legislative intent. The key consideration is that, in construing the statutes contrary to legislative intent, the courts imposed criminal sanctions without statutory authorityi.e., they imposed criminal sanctions where none were intended. The rulings thus violated the Due Process Clause and all defendants convicted or sentenced without statutory authority were entitled to relief.[12]

V. CONCLUSION
Our decision in Hayes v. State, 750 So.2d 1 (Fla.1999), is a clarification of extant law and, pursuant to the United States Supreme Court decision in Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), must be applied to final cases.[13] Under section 893.135(1)(c)1, trafficking in a Schedule III drug or mixture thereof was never intended by the Legislature to be a crime.
The district court below analyzed our decision in Hayes in terms of its impact on the validity of criminal sentences in the various judicial districts, and the court remanded "for an evidentiary hearing to determine the validity of [Klayman's] sentence pursuant to Hayes v. State, and for resentencing if appropriate." *255 This was imprecise. Our decision in Hayes addressed the validity of a trafficking conviction, not a trafficking sentence. On remand, the trial court should conduct an evidentiary hearing to determine whether the "mixture" possessed by Klayman contained a Schedule I or II drug; if not, his trafficking conviction must be reversed and sentence vacated.
We answer the certified question and approve Klayman v. State, 765 So.2d 784 (Fla. 4th DCA 2000), as explained herein.
It is so ordered.
ANSTEAD, C.J., and LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion, in which HARDING, Senior Justice, concurs.
PARIENTE, J., recused.
WELLS, C.J., dissenting.
This case presents the repeatedly vexing question of what is to be done in postconviction claims by an individual who has been convicted of a crime based upon an interpretation of a criminal statute when that conviction was final at the time the district court of appeal affirmed the conviction but, subsequently, the interpretation of the statute is determined by this Court to be incorrect. Does the subsequent opinion of this Court mean that the individual was convicted of a crime which became nonexistent by this Court's later different interpretation of the criminal statute, or was the individual convicted of a crime which existed until such time as the law in the district where the individual was convicted was changed by this Court?
The answer to this vexing question obviously pits the judicial system's necessity for systemic finality against the individual circumstances in a particular case. This Court made a decision and wrote a comprehensive opinion in 1980, discussing in detail the serious issues involved, and provided an analysis upon which retroactivity of decisional law is to be applied in postconviction to all Florida criminal cases including death cases. The case in which this was done was Witt v. State, 387 So.2d 922 (Fla.1980). Today the majority in this Court erroneously abandons this analysis when applying this Court's decisions that have changed a district court of appeal's interpretation of the law. Therefore, I dissent.
I dissent not only because the majority abandons twenty-two years of applying Witt to these types of cases but also because the majority ignores the procedural concept under which the district courts of appeal were adopted in the 1950s and under which Florida's court structure has operated since that time. The majority's decision to apply Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), to the instant case repudiates the concept that the decisions of the district courts are "final" decisions in respect to criminal appeals. Based on the majority's decision in this case, every decision in which a district court has construed and applied a criminal statute is now "nonfinal" until the statute is ultimately "clarified" by this Court. Given this Court's limited jurisdiction, this could occur years upon years after the district court has first construed the statute.
A plain reading of Fiore should show that it is not applicable to Florida's court structure. In Fiore, the Supreme Court had asked the Pennsylvania Supreme Court, "Does the interpretation of [the statute there in question,] set forth in Commonwealth v. Scarpone, 535 Pa. 273, 279, 634 A.2d 1109, 1112 (1993), state the correct interpretation of the law of Pennsylvania at the date Fiore's conviction became final?" Fiore, 531 U.S. at 228, 121 S.Ct. 712. In replying to that question, *256 the Pennsylvania Supreme Court stated: "Our ruling merely clarified the plain language of the statute.... Our interpretation... furnishes the proper statement of the law at the date Fiore's conviction became final." Id. (first omission in original). The Supreme Court then held:
The Pennsylvania Supreme Court's reply specifies that the interpretation of [the statute] set out in Scarpone "merely clarified" the statute and was the law of Pennsylvaniaas properly interpretedat the time of Fiore's conviction. Because Scarpone was not new law, this case presented no issue of retroactivity.
Fiore, 531 U.S. at 228, 121 S.Ct. 712.
If this inquiry were made to this Court and this Court followed its precedent, it would answer that "the law" on the date that a defendant's conviction became "final" was "the law" as it had been interpreted by the district court in the district in which the individual was convicted on the day of his conviction. It is because this would have to be the answer, based upon this Court's precedent, that the majority now rewrites and effectively recedes from the contrary language and analysis in State v. Stevens, 714 So.2d 347 (Fla.1998), State v. Callaway, 658 So.2d 983 (Fla. 1995), and Bass v. State, 530 So.2d 282 (Fla.1988). Majority op. at 252-53 n. 8. In fact, the majority also does the same in respect to McCuiston v. State, 534 So.2d 1144 (Fla.1988), and State v. Glenn, 558 So.2d 4 (Fla.1990).
Remarkably, in a Yogi Berra-like "deja vu all over again," the majority, in reality, merely returns to a path which this Court started down before but then from which this Court appropriately receded. See Bass v. State, 12 Fla. L. Weekly 289 (Fla. June 11, 1987), withdrawn on reh'g, 530 So.2d 282 (Fla.1988). In its initial opinion in Bass, this Court addressed the issue of whether Palmer v. State, 438 So.2d 1 (Fla. 1983), constituted "a change in the substantive law of sentencing or ... merely interpret[ed] pre-existing statutory law." This Court stated:
[I]n Palmer, this Court merely interpreted statutory provisions and corrected errors in the imposition of a statute which existed prior to our decision in Palmer. That opinion did not announce any new changes in the law itself. It simply examined the statute and corrected mistakes in its implementation.
Because we believe that Palmer does not represent any change in law, we need not ... here consider whether Palmer should retroactively apply. Our determination that Palmer did not change the law of sentencing in any substantive way necessarily precludes examination of those issues.
Bass, 530 So.2d at 283.
Expressing the same concerns I now have, Justice Ehrlich dissented "[b]ecause the majority's reasoning is both illogical and contrary to the proper understanding of this Court's relationship to the district courts and because the result reached undermines society's need for finality powerfully explicated in Witt." Bass, 530 So.2d at 283 (Ehrlich, J., dissenting). Justice Ehrlich further stated:
The majority attributes controlling significance to the fact that Palmer did not "change" the law, but merely interpreted pre-existing statutory law. I respectfully suggest that this statement cannot withstand analysis.
The district courts of appeal are, in most instances, courts of last resort, Johns v. Wainwright, 253 So.2d 873 (Fla.1971), and the "decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court." Stanfill v. State, 384 So.2d 141, 143 (Fla.1980).
*257 The decision of the First District Court of Appeal in Palmer was not a case of first impression, see Davis v. State, 392 So.2d 947 (Fla. 3d DCA 1980) (approving consecutive mandatory minimum three year sentences for robbery and kidnapping in spite of the defendant's claim that both offenses arose from the same episode). Therefore, the district courts' decisions in Palmer and Davis were the law in this state until this Court changed the law and interpreted the statute at issue contrary to the district courts' interpretation.
Under the majority's reasoning, however, we did not "change" the law! The fact that we took a contrary view of the statute at issue in Palmer than did the district courts clearly evidences that we did change the law in Florida on this issue. Taken to its logical conclusion, therefore, the majority holds that until this Court decides any issue, there is no extant law.
Bass, 530 So.2d at 283 (Ehrlich, J., dissenting).
The initial Bass decision caused immediate confusion in the district courts of appeal. In a detailed opinion in Hall v. State, 511 So.2d 1038, 1042 (Fla. 1st DCA 1987), Judge Zehmer expressed similar concerns about this Court's effective abandonment of district court finality. Subsequently, this Court withdrew Bass and substituted a new Bass opinion, which held that Palmer should be applied retroactively. See Bass, 530 So.2d at 282. This Court explained the withdrawal of the first Bass opinion in McCuiston v. State, 534 So.2d 1144, 1146 (Fla.1988) (addressing whether Whitehead v. State, 498 So.2d 863 (Fla.1986), should be retroactively applied).
On September 1, 1988, this Court, on rehearing, withdrew its opinion in Bass and substituted a new opinion in lieu thereof. We maintained our position that Bass was entitled to relief but did so only on the basis that Palmer should be deemed to have retroactive application. That portion of our original opinion placing in doubt lower court constructions of sentencing statutes until approved or overruled by the Supreme Court which puzzled the First District Court of Appeal in Hall is not contained in our new opinion. Therefore, the determination of whether Whitehead has retroactive application should be decided upon traditional principles pertaining to changes in decisional law.
534 So.2d at 1146 (emphasis added). In McCuiston, this Court then proceeded to return to and perform a Witt analysis. See McCuiston, 534 So.2d at 1146-47.
In State v. Callaway, 658 So.2d 983 (Fla. 1995), receded from on other grounds, Dixon v. State, 730 So.2d 265 (Fla.1999), this Court reaffirmed that Witt is the appropriate standard by stating:
[W]e note that the district court of appeal expressed some concern over whether this Court's decision in Bass v. State, 530 So.2d 282 (Fla.1988), established a different standard than that expressed in Witt for determining whether a change of law should be applied retroactively to provide postconviction relief. In Bass, we found that it would be "manifestly unfair" not to retroactively apply the decision in Palmer .... The Bass opinion, however, did not address the principles of Witt, and this caused some confusion among the courts regarding the proper standard for determining whether a change in law should be retroactively applied. We addressed this confusion in both McCuiston... and State v. Glenn, 558 So.2d 4 (Fla. 1990), and stated that Witt is "the controlling case by which to determine whether a change in decisional law should be applied retroactively." Glenn, *258 558 So.2d at 7. We reaffirm our decisions in McCuiston and Glenn and again recognize that Witt provides the proper standard for determining whether a change in the law should be retroactively applied to provide postconviction relief under rule 3.850.

Callaway, 658 So.2d at 986 (emphasis added).
I conclude that Justice Erhlich was correct in his analysis in the dissent to the original Bass decision, which was acknowledged by this Court in 1988 in McCuiston and in 1995 in Callaway. Up until the present majority decision, with the exception of the brief life of the initial Bass opinion, the decisions of the district courts of appeal have been considered final decisions under Florida's judicial structure. The law of those decisions can be changed by this Court in resolving district conflict or answering certified questions, but until that occurs, this Court has made clear that a district court's decision is "the law." Stanfill v. State, 384 So.2d 141, 143 (Fla. 1980).
This Court has also made it clear that a decision of the district court must be applied to all trial courts unless there is an interdistrict conflict. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992). Therefore, under our procedure, the law of a district court as to a statute is the "law" and is to be applied as that court interprets it unless we change it. See Stanfill, 384 So.2d at 143. This Court has limited jurisdiction, and we cannot change the district court's statutory interpretation unless there is a constitutionally specified basis for this Court to review the district court's decision. See art. V, § 3(b)(1), (3)-(4), Fla. Const. Plainly, it was in recognition of and respect for this long-established constitutional limitation that this Court rejected a clarification analysis in McCuiston. See McCuiston, 534 So.2d at 1146.
Without adherence to this concept, the law in Florida will be unsettled and unstable for many years. This Court has no power authorized by the constitution to reach down and assume jurisdiction in a case simply because a majority of this Court concludes that a district court's construction of a criminal statute is wrong. See Mystan Marine, Inc. v. Harrington, 339 So.2d 200, 201 (Fla.1976) ("The jurisdiction of this Court extends only to the narrow class of cases enumerated in Article V, Section 3(b) of the Florida Constitution. Time and again we have noted the limitations on our review and have refused to become a court of select errors."). Consequently, even if the majority of this Court believes that a district court's decision is wrong, that decision remains the authoritative interpretation of that statute, which is to be applied by every trial court in Florida until another district court construes the statute with a conflicting interpretation or until a district court certifies a question about a case involving the statute to this Court. Therefore, a district court's interpretation which this Court's majority believes is wrong could hypothetically remain the authentic interpretation for the entire life of the statute or for many, many years until this Court accepts a case presenting express conflict or a certified question. Finally, even though a district court interprets a statute in conflict with another district court, the trial courts in a district which has interpreted the statute must apply their district court's interpretation as "the law" until this Court exercises its discretion to accept a case or cases to resolve the conflict. See Stanfill, 384 So.2d at 143. It can only logically follow under Florida's judicial structure that the decisions of the district courts of appeal are final interpretations until the law is changed by this Court.
*259 Therefore, it is my conclusion that because this Court's decision in Hayes v. State, 750 So.2d 1, 5 (Fla.1999), constitutes under our judicial structure a change in the law rather than a clarification of the then existing law, Fiore does not control the instant case. See Fiore, 531 U.S. at 228, 121 S.Ct. 712. The majority errs by abandoning Witt in these types of cases and returning to the confusion created by the brief life of the withdrawn Bass opinion. Moreover, to conclude that both Witt and Fiore apply in Florida hopelessly confuses our jurisprudence.
The question certified to this Court is whether this Court's decision in Hayes, 750 So.2d at 5, should be given retroactive application. See Klayman, 765 So.2d at 785. Applying the appropriate test for determining whether a decision of this Court should be given retroactive application as established in Witt, a change in the law must: (1) emanate from this Court or the United States Supreme Court; (2) be constitutional in nature; and (3) constitute "a development of fundamental significance." Witt, 387 So.2d at 931. I would conclude that Hayes should not be given retroactive application because it is not constitutional in nature. See id. at 929 ("We emphasize at this point that only major constitutional changes of law will be cognizable ...."); see also State v. Stevens, 714 So.2d 347, 349 (Fla.1998) (Harding, J., concurring) ("This does not mean that every case that invalidates a statutory offense based on statutory construction grounds will be constitutional in nature.").
Hayes was patently a garden-variety statutory construction case, and there is not a single word in the Hayes decision about the constitution or any constitutional right. Cf. State v. Woodley, 695 So.2d 297 (Fla.1997) (refusing to retroactively apply State v. Gray, 654 So.2d 552 (Fla.1995), which held that attempted felony murder is logically impossible). Therefore, I would quash the Fourth District Court of Appeal's decision in Klayman, 765 So.2d at 785. But even if this Court decides that Hayes should be retroactively applied, clearly that mistake would not equate to the substantial magnitude of the mistake constituted by abandoning Witt in cases where this Court has changed a district court's interpretation of the law and erroneously introducing into our jurisprudence a Fiore analysis, which obviously does not apply.
HARDING, Senior Justice, concurs.
NOTES
[1] See § 893.135(1)(c)1, Fla. Stat. (Supp.1996). The statute was enacted in 1979. See ch. 79-1, § 1, at 9, Laws of Fla. It was amended in 1995 to include hydrocodone and several other drugs. See ch. 95-415, § 5, at 3417, Laws of Fla.
[2] See Hayes, 750 So.2d at 2.
[3] See id. at 2-3.
[4] In the wake of Hayes, the Legislature in 2000 amended Schedule III to delete reference to hydrocodone, thus making four grams or more of hydrocodone, or four grams or more of any mixture containing hydrocodone, a Schedule II drug embraced by the trafficking statute, regardless of the dosage unit. See § 893.03(3), Fla. Stat. (2000). In 2001, the Legislature then reversed itself and reinstated certain quantities of hydrocodone as a Schedule III drug. See ch.2001-55, § 1, at 357, Laws of Fla.
[5] See State v. Glatzmayer, 789 So.2d 297, 301-02 n. 7 (Fla.2001) ("If the ruling consists of a pure question of law, the ruling is subject to de novo review.").
[6] The Commonwealth argued that even though Fiore possessed a valid permit he nonetheless had deviated so dramatically from the permit's terms that he had violated the statute. See Fiore, 531 U.S. at 227, 121 S.Ct. 712.
[7] This Court in Witt v. State, 387 So.2d 922 (Fla. 1980), divided "changes" in the decisional law into two groups: "jurisprudential upheavals" and "evolutionary refinements" in the law. Jurisprudential upheavals are applied retroactively; evolutionary refinements in the law are not applied retroactively.
[8] For instance, although this Court held that the following decisions warranted retroactive application under Witt, the decisions when viewed in light of Fiore appear to be routine statutory "clarification" cases, not "major constitutional changes of law" as required by Witt: (1) State v. Iacovone, 660 So.2d 1371 (Fla. 1995) (holding that enhanced penalties for attempted second- and third-degree murder of a law enforcement officer were not authorized by statute); (2) Hale v. State, 630 So.2d 521 (Fla. 1993) (holding that consecutive habitual offender sentences for crimes arising from a single criminal episode were not authorized by statute); and (3) Palmer v. State, 438 So.2d 1 (Fla. 1983) (holding that consecutive mandatory minimum sentences for use of a firearm in crimes arising from a single criminal episode were not authorized by statute). See State v. Stevens, 714 So.2d 347 (Fla.1998) (applying Iacovone retroactively); State v. Callaway, 658 So.2d 983 (Fla. 1995) (applying Hale retroactively); Bass v. State, 530 So.2d 282 (Fla. 1988) (applying Palmer retroactively).
[9] For example, the Legislature directly ceded to the courts the authority to formulate grounds for departing from the sentencing guidelines. See § 921.001(6), Fla. Stat. (2001) ("A court may impose a departure sentence outside the sentencing guidelines based upon circumstances or factors which reasonably justify the aggravation or mitigation of the sentence....").
[10] The Legislature may indirectly cede discretion to the courts by employing language that commonly requires judicial construction. Examples of such language include "careful and prudent," "reasonable," and "probable cause." See, e.g., § 316.1925, Fla. Stat. (2001) ("Any person operating a vehicle upon the streets or highways within the state shall drive the same in a careful and prudent manner....") (emphasis added); § 856.015(2), Fla. Stat. (2001) ("No adult having control of any residence shall allow an open house party to take place at said residence if any alcoholic beverage or drug is possessed or consumed... by a minor ... and where the adult fails to take reasonable steps to prevent the possession or consumption of the alcoholic beverage or drug.") (emphasis added); § 933.04, Fla. Stat. (2001) ("[N]o search warrant shall be issued except upon probable cause ....") (emphasis added).
[11] As noted above, the trafficking statute was enacted in 1979 and was amended in 1995 to include hydrocodone and other drugs. See supra note 1.
[12] Florida courts have held that imposition of criminal sanctions without statutory authority is fundamental error. See, e.g., Achin v. State, 436 So.2d 30, 31 (Fla. 1982) ("We hold that one may never be convicted of a nonexistent crime...."); Mundell v. State, 739 So.2d 1201, 1202 (Fla. 5th DCA 1999) ("Although Mr. Mundell never objected to his conviction for this offense and even requested a jury instruction on this nonexistent offense, the error can be raised for the first time on appeal because the crime of which he was convicted does not exist."); Fredericks v. State, 675 So.2d 989, 990 (Fla. 1st DCA 1996) ("Conviction of a non-existent crime is fundamental error mandating reversal even when the error was invited by the defendant...."); Ward v. State, 446 So.2d 267, 267 (Fla. 2d DCA 1984) ("Ward argues that attempted uttering is not an offense under Florida law. He is correct. Imposition of judgment and sentence for attempted uttering is fundamental error requiring reversal.").
[13] Postconviction claims for relief under Hayes must be filed within two years of the date mandate issues in the present case. Cf. Dixon v. State, 730 So.2d 265, 268-69 (Fla. 1999) ("In view of the limited number of opinions that are given retroactive effect and the uncertainty that exists over whether a particular decision will be accorded retroactive effect, we consider it reasonable to calculate the two-year time period for eligible defendants to file their claims from the time our decision announcing retroactivity becomes final."); see also id. at 267 n. 3 ("An opinion of this Court becomes final upon issuance of the mandate.").